UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG DAVIS, as parent and natural guardian of ANDREW DAVIS,<br>                   Plaintiff,<br>-against-<br><br>CATAMOUNT DEVELOPMENT CORP.,<br>CATAMOUNT DEVELOPMENT CORP,<br>d/b/a CATAMOUNT SKI AREA,<br>                   Defendants. | CIVIL ACTION<br>No. 05-30011-MAP |

**PLAINTIFF'S MOTION TO CONTINUE DEPOSITION
AND TO COMPEL
ANSWERS TO DEPOSITION QUESTIONS**

Now comes Plaintiff, Andrew Davis, and seeks an order from this Court directing William Gilbert to attend a continued deposition and answer questions relating to economic interests which may bias his testimony or tend to establish a motive to attack his credibility. In further support, Plaintiff states:

1. William Gilbert, a part owner and general manager of Defendant, Catamount Development Corp., was deposed on February 27, 2006.

2. At that deposition, his counsel instructed him not to answer a variety of questions relating to his percentage ownership, his salary, and similar questions regarding his son (see Exhibit A).

3. Plaintiff's counsel cited Rule 30 (d) (1) which states:

    "A person may instruct a witness not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court or to present a motion under Rule 30 (d) (4)."

4. A party is entitled to discover any relevant information, regardless of admissibility during discovery proceedings Rule 26 (b) (1). It is clear that evidence which goes to a witness' economic interest in a litigation, which may tend to establish bias, and a motive to give untruthful testimony is both discoverable, and a proper avenue of cross-examination. See, e.g., United States v. International Business Machines Corp., 66 F.R.D. 215 (S.D.N.Y. 1974). In

that case the District Court held a witness could be deposed as to total value of a partnership investment portfolio, partnership's profits and losses, partner's contribution to capital and manner of dividing profits despite objections regarding privacy. The Court stated:

> One of the purposes of discovery is to obtain information for use on cross-examination and for the impeachment of witnesses. The credibility of a witness' testimony is of the utmost importance since to evaluate the state of proof one must determine which evidence and what testimony is believable. In measuring the credibility of a witness' testimony, it is thereby important to search out which such testimony is biased by personal motives and the force of any motives and to explore a witness' interest in the outcome of a case and the extent of that interest" Id. at 218-19. (citations omitted).

5. Indeed the standard Massachusetts District Court Jury instruction on the "Credibility of Witnesses" includes the following:

> "You may also consider the witness's motive for testifying, whether the witness displays any bias in doing so, and whether a witness has any interest in the outcome of the case"

Supplemental Instr. #2 of Model Jury Instructions for use in the District Court (MCLE 1995). See also <u>Cameron v. Norfolk and Dedham Mutual Fire Insurance Co. Inc.</u>, 2000 WL 1584853 (Massachusetts Superior Court 2000) (court overruled objections re: annoyance, and required production of documents re: payment of individual officer's legal fees since it was relevant to establish bias and motive).

6. Liacos suggests that "bias or interest is not a collateral matter. Cross-examination to show bias, prejudice or interest is a matter of right that may assume constitutional dimensions if the witness has testified to material facts." Liacos, Handbook of Massachusetts Evidence (5th ed.) § 8.C @ 145.

7. Thus it appears clear that Defendant's counsel improperly restricted permissible discovery by instructing William Gilbert not to answer any questions concerning his economic interest in Defendant's business.

8. Counsel for Plaintiff is willing to keep the deposition transcript sections regarding this data confidential, restricting its use to this lawsuit.

8. However, Plaintiff is unwilling to limit its deposition rights by reviewing attorney-crafted written answers to these questions. Since Mr. Gilbert is certain to testify (indeed Plaintiff intends to call him as a witness on the direct case) Plaintiff is entitled to review the information with the witness in a question-and-answer deposition setting, which can then be used to impeach him if conflicting answers are given under oath at trial.

WHEREFORE, Plaintiff respectfully requests that this Court issue an order directing William Gilbert to appear for further deposition and answer questions regarding economic interest, bias or motive.

Respectfully Submitted,
Craig Davis, as parent of Andrew Davis, Plaintiff
by his attorney,

March 16, 2006

Charles J. Ferris
500 Main Street
Great Barrington, MA 01230
413 528-8900
413-528-9132 facsimile
BBO # 565630

## CERTIFICATION

Plaintiff certifies that prior to filing this motion, Plaintiff made a good faith effort to resolve the matter with opposing counsel by consulting with him in person on March 6, 2006 and thereafter through email, and was unable to do so.

Charles J. Ferris

```
 1              UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3
                      Civil Action No. 05-30011-MAP
 4                    Pages 1-108

 5   CRAIG DAVIS, as Parent and
     Natural Guardian of ANDREW DAVIS
 6
     vs.
 7
     CATAMOUNT DEVELOPMENT CORP.,
 8   CATAMOUNT DEVELOPMENT CORP., d/b/a
     CATAMOUNT SKI AREA
 9

10        DEPOSITION OF: WILLIAM GILBERT, taken
     before Heather J. Davis, Certified Shorthand
11   Reporter and Notary Public, pursuant to Rule 30 of
     the Massachusetts Rules of Civil Procedure, at the
12   offices of CHARLES J. FERRIS, ESQUIRE, 500 Main
     Street, Great Barrington, Massachusetts on
13   February 27, 2006, commencing at 9:56 AM.

14
     APPEARANCES:
15

16   (SEE PAGE TWO)

17

18

19             Heather J. Davis
               Registered Merit Reporter
20

21

22

23             DAVIS & MITCHELL
                P.O. Box 1367
24           Pittsfield, MA 01202
     Tel. (413) 499-0035    Fax (413) 499-7823
```

DAVIS & MITCHELL
(413) 499-0035


EXHIBIT A

```
 1        Q.    What was the subject of that
 2   discussion?
 3              MS. CARLEEN:  Object to the form.
 4              THE WITNESS:  Terrain parks.
 5        Q.   (BY MR. FERRIS)  For snowboarders?
 6              MS. CARLEEN:  Objection.
 7              THE WITNESS:  Terrain parks are
 8   for skiers and snowboards.
 9        Q.   (BY MR. FERRIS)  Okay.  Any other
10   education -- withdrawn.
11              Have you had any other education,
12   other than these semiannual panels, with respect
13   to operating ski areas?
14        A.    I can't think of them.  Most likely I
15   have.
16        Q.    Okay.  Now, you said you own a
17   percentage of Catamount Development Corp.?
18        A.    Yes.
19        Q.    What percent do you own?
20              MS. CARLEEN: Objection.  This is
21   not relevant.
22              MR. FERRIS:  It relates to his
23   motivation and credibility.
24              MS. CARLEEN:  Objection.  I think
```

1   it's completely irrelevant and I object to this
2   line of questioning.
3       Q.   (BY MR. FERRIS)   You can answer.
4       A.   I think she answered.
5       Q.   No.  She -- I haven't heard your
6   attorney direct you not to answer, and I would
7   just cite Rule 30, which states that a person may
8   instruct the deponent not to answer only when
9   necessary to preserve a privilege, enforce a
10  limitation directed by the Court, or to present a
11  motion under Rule 30(d)(4).  So I don't believe
12  that she's telling you not to answer.
13          MS. CARLEEN:  Could you repeat
14  the question or read back the question, please?
15      Q.   (BY MR. FERRIS)   What percentage of
16  Catamount Development Corporation do you own?
17          MS. CARLEEN:  Yeah.  I'm going to
18  instruct him not to answer that question.
19      Q.   (BY MR. FERRIS)   What percentage of
20  Catamount Development Corporation does your son
21  own?
22          MS. CARLEEN:  Same instruction.
23      Q.   (BY MR. FERRIS)   What is your salary
24  at Catamount Development Corporation?

```
 1                    MS. CARLEEN:  Same instruction.
 2     It's completely irrelevant and it's being asked
 3     to harass.
 4                    MR. FERRIS:  It is most
 5     definitely not being asked to harass.  I have no
 6     particular interest in this, other than trying to
 7     determine what the credibility of this witness
 8     is.
 9                    MS. CARLEEN:  But the type of
10     answer you're trying to evoke would create more
11     prejudice than anything probative here, so I am
12     instructing him not to answer the question.
13     That's my position, absent a court order.
14                    MR. FERRIS:  Okay.  I'll need
15     that part of the transcript, also.
16         Q.    (BY MR. FERRIS)   In addition to
17     receiving a salary, do you share in the income of
18     Catamount Development Corporation?
19                    MS. CARLEEN:  Same instruction.
20                    THE WITNESS:  No.
21         Q.    (BY MR. FERRIS)   You don't share in
22     the income of Catamount Development Corporation?
23                    THE WITNESS:  I'm sorry?
24                    MS. CARLEEN:  That's fine.  If
```

```
 1    you're comfortable answering, that's fine.
 2         Q.    (BY MR. FERRIS)   Do you receive a
 3    salary?
 4              MS. CARLEEN:   Same instruction.
 5              MR. FERRIS:   So I'm not entitled
 6    to know whether your witness is paid as a paid
 7    employee of Catamount Development Corporation?
 8              MS. CARLEEN:   What are you trying
 9    to get here, how much his salary is?
10              MR. FERRIS:   I'm asking
11    questions --
12              MS. CARLEEN:   You're asking --
13    phrase your question with regard to Catamount.
14    Does he get paid by Catamount, is that what
15    you're asking?   I don't know what you're asking.
16         Q.   (BY MR. FERRIS) Well, do you receive
17    a salary from Catamount Development Corporation?
18              MS. CARLEEN:   You can answer that
19    yes or no.
20              THE WITNESS:   Yes.
21         Q.   (BY MR. FERRIS)   Do you receive a
22    salary from any other business entities?
23              MS. CARLEEN:   Objection.
24              THE WITNESS:   No.
```

1    Q.    (BY MR. FERRIS)  Okay.  Are there
2  any other business entities or organizations
3  involved in the operation of Catamount
4  Development Corporation?
5    A.    No.
6    Q.    Okay.  So you do receive a salary but
7  you will not state what that salary is, is that
8  correct?
9    A.    That's correct.
10          MS. CARLEEN:  Correct.
11          MR. FERRIS:  Okay.
12    Q.    (BY MR. FERRIS)  Does your son also
13  receive a salary?
14          MS. CARLEEN:  Same objection.
15    Q.    (BY MR. FERRIS)  Does he receive a
16  salary?
17    A.    Yes.
18    Q.    Okay. Now, in addition to fencing
19  that's attached to wooden posts, does Catamount
20  use any fencing that's attached to any break-away
21  or flexible posts?
22          MS. CARLEEN:  Object to the form.
23          THE WITNESS:  Yes.
24    Q.    (BY MR. FERRIS)  Okay.  What are the