UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG DAVIS, as parent and natural guardian of ANDREW DAVIS,<br>         Plaintiff,<br> -against-<br><br>CATAMOUNT DEVELOPMENT CORP.,<br>CATAMOUNT DEVELOPMENT CORP,<br>d/b/a CATAMOUNT SKI AREA,<br>         Defendants. | CIVIL ACTION<br>No. 05-30011-MAP |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION
OF ACCIDENT SITE PHOTOGRAPHS**

Now comes Plaintiff, Andrew Davis, and moves this Court for an order compelling Defendant Catamount Development Corp. ("Catamount") to produce all photographs of the accident site in its custody or control. In further support Plaintiff states:

1. This is a personal injury case arising out of a skiing accident that took place at Catamount on January 25, 2004 when Plaintiff collided with a fence post obstructing a ski trail (the "Accident").

2. Plaintiff requested the following as part of its initial document request:

   "20. Any and all . . . (b) drawings, diagrams, maps or photographs of the Accident site (before or after the Accident) . . ." (Exhibit A)

3. In response, Catamount stated that this request was "irrelevant, vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence . . ." (Exhibit A, Response to Item 20)

4. Catamount further objected on the grounds that the request was seeking

   "documents and/or information obtained in anticipation of litigation and/or which are protected by the attorney-client privilege and/or work product doctrine and which are exempted from discovery under Rule 26 (b) (3) . . ." (Id.)

5.  Without waiving the objections, Catamount disclosed that:

    "it is in possession of photographs provided by Plaintiff's counsel. Further, it is in possession of several photographs of the accident site, some of which were taken several days after the accident and some of which were taken in the summer of 2004, which are privileged" (Id.)

6.  Thus, it appears there are at least two categories of photographs at issue

    (i)  Photographs of the accident site taken several days after the Accident, ("Category I" photos)

    (ii) Photographs taken in the summer of 2004 ("Category II" photos)

7.  Indeed, Mr. Gilbert, Catamount's manager testified at his deposition that Mr. Edwards, a vice-president, took photographs of the Accident site several days after the Accident took place (Exhibit B).

8.  In addition to its initial document request, Plaintiff subpoenaed several categories of its custodian of documents (see Exhibit C).

9.  Included in that subpoena which was served one month prior to the deposition was a request for: "Any and all: . . . photographs of the Accident site (before or after the Accident) (Exhibit C, item 20).

10. Catamount did not interpose an objection, or seek a protective order with respect to the subpoena.

11. Plaintiff asserts that the photographs should be produced for the following reasons:

    (a)  Photographs of the Accident site taken at or about the time of Accident are extremely relevant and probative as to the condition of the Accident site, and bear directly on the disputed issues of fact in this case.

    (b)  The Category I photos are not attorney work product or necessarily prepared in anticipation of litigation. They were taken by a Catamount employee nearly one year before a suit was commenced, and several months before a notice of claim was delivered. There could be legitimate reasons for taking such photographs, such as reviewing trail layouts, fences and signs, wholly apart from this lawsuit. They do not involve mental impressions of Catamount's attorney.

    (c)    Rule 26 (a) (1) requires production of any "tangible things" which a "party may use to support its claims and defenses" without even awaiting a discovery request. This would apply to both Category I and Category II photos, and should have been done prior to depositions.

    (d)    By failing to object or move in a timely fashion for a protective order with respect to the subpoena, Catamount has waived it objections. Rule 45 (c) (3).

12. The burden of a party resisting discovery is to establish that the material is attorney work product or material prepared in anticipation of litigation. Pasteris v. Robillard, 121 FRD 18, 20 (D. Mass. 1988). Here, the Category I photos were not produced by or at the direction of an attorney, or at a time that litigation was near. Although Catamount may now claim the photographs were taken in anticipation of litigation, there are other possible uses for the photographs (re-evaluation of signs, fences, layout of trails, in light of accident).

13. Even if material is "attorney work product" it still may be required to be produced where there is a "substantial need" and a party cannot obtain the material "without undue hardship" Papadakis v CSK Transp., Inc., _FRD_, 2006 WL 75313 (D. Mass. 2006) (ordering production of surveillance videos); Raffa v. Gymnastics Learning Center, Inc., 2002 WL 389889 (Mass. Super. Ct. 2002) (production of photographs of exercise device ordered where machine no longer available).

14. Here, the Defendant's photographs of the Accident site taken shortly after the Accident may be highly probative of disputed facts. Even though Plaintiff has taken his own photographs after the Accident took place, Catamount's photographs may shed additional light on trail layout, skier usage of the area in question, snow conditions, fence conditions, etc. This physical layout cannot be re-created now.

15. The Category II photos taken at the direction of an attorney several months after a notice of claim was filed still may be relevant to the case, and do not contain mental impressions of the attorney. In re: Grand Jury Subpoena, 220 FRD 130 (D. Mass. 2004). They should have been produced as part of Rule 26 automatic disclosure of tangible things. If they are not ordered produced, Defendant should be barred from using them at trial.

WHEREFORE, Plaintiff requests that the Category I and Category II photos be produced. If they are not produced, the Court should bar their use at trial.

March 16, 2006

Respectfully Submitted,
Craig Davis, as parent of Andrew Davis, Plaintiff
by his attorney,

*[signature]*

Charles J. Ferris
500 Main Street
Great Barrington, MA 01230
413 528-8900
413-528-9132 facsimile
BBO # 565630

## CERTIFICATION

The undersigned hereby certifies that he consulted with counsel for Defendant on March 6, 2006 in person and thereafter through email, and was unable to resolve the matter or narrow the issues.

*[signature]*

Charles J. Ferris

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * *
                              *
CRAIG DAVIS, as parent and    *
natural guardian of           *
ANDREW DAVIS,                 *
    Plaintiff,                *
                              *
vs.                           *   CIVIL ACTION
                              *   No. 05-30011-MAP
CATAMOUNT DEVELOPMENT CORP.,  *
CATAMOUNT DEVELOPMENT CORP.   *
d/b/a CATAMOUNT SKI AREA,     *
    Defendants.               *
                              *
                              *
* * * * * * * * * * * * * * *
```

(EXTRACT OF)
<u>DEFENDANT CATAMOUNT DEVELOPMENT CORP.'S RESPONSE TO PLAINTIFF'S
REQUEST FOR PRODUCTION OF DOCUMENTS</u>

<u>Request No. 1</u>

All documents concerning communications between Catamount and Plaintiff, or Plaintiff's family members, including Craig Davis and Elizabeth Davis.

<u>Response No. 1</u>

The defendant refers the plaintiff to the Race Team Application attached as Exhibit A, to the Discount Voucher attached as Exhibit B, and to the Incident Report attached as Exhibit D to the extent that they are responsive.

<u>Request No. 2</u>

All documents concerning communications between Catamount and any insurer (or insurance broker/agent) in connection with any policy which may cover the claims raised in the complaint, and a copy of said policy.

<u>Response No. 2</u>

Objection. The defendant objects to this request on the grounds that it is irrelevant, vague, ambiguous, overly broad, unduly


EXHIBIT A

supplement this response.

Request No. 18

Any and all written agreements, applications, releases between the Plaintiff and the Defendant in this suit.

Response No. 18

Objection. The defendant objects to this request on the grounds that it is vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26(b) of the Federal Rules of Civil Procedure. The defendant refers the plaintiff to the Race Team Application attached as Exhibit A and to the Discount Voucher attached as Exhibit B to the extent that they are responsive.

Request No. 19

Any and all police reports and any other documents prepared by any governmental agency regarding the incident which is subject matter of this lawsuit and the investigation thereof.

Response No. 19

The defendant states that it does not have any such documents.

Request No. 20

Any and all:

a. investigative reports;
b. witness statements;
c. drawings, diagrams, maps or photographs of the Accident site (before or after the Accident);
d. signed or unsigned statements or transcribed statements signed or unsigned; and
e. any other investigative materials prepared or obtained as a result of the incident which is the subject matter of this suit.

Response No. 20

Objection. The defendant objects to this request on the grounds that it is irrelevant, vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26(b) of the Federal Rules of Civil Procedure. The defendant further objects to this request to the extent that it seeks documents and/or information obtained in anticipation of litigation and/or which

are protected by the attorney-client privilege and/or work product doctrine and which are exempted from discovery under Rule 26(b)(3) of the Federal Rules of Civil Procedure. Without waiving these objections:

   a.   The defendant refers the plaintiff to the Incident Report attached as Exhibit D;
   b.   The defendant refers the plaintiff to the Incident Report attached as Exhibit D;
   c.   The defendant states that it is in possession of photographs provided by plaintiff's counsel. Further answering, the defendant states that it is in possession of several photographs of the accident site, some of which were taken several days after the accident and some of which were taken in the summer of 2004, which are privileged.
   d.   The defendant refers the plaintiff to the Incident Report attached as Exhibit D; and
   e.   The defendant refers the plaintiff to the Incident Report attached as Exhibit D.

Request No. 21

Any and all communications, correspondences, notices and agreements between the Plaintiff and Defendant regarding the incident which is the subject matter of this suit.

Response No. 21

The defendant refers the plaintiff to the demand letter produced by plaintiff's counsel.

Request No. 22

All documents containing the names, addresses and/or telephone numbers of other children who were participating in the ski class or racing team that Plaintiff was a part of at the time of the Accident, including but not limited to applications and releases, whether or not these children were present on the date of the Accident.

Response No. 22

Objection. The defendant objects to this request on the grounds that it is irrelevant, vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26(b) of the Federal Rules of Civil Procedure. Without waiving this objection, the defendant states that it does not have any such documents.

```
 1                UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF MASSACHUSETTS

 3
                            Civil Action No. 05-30011-MAP
 4                          Pages 1-108

 5   CRAIG DAVIS, as Parent and
     Natural Guardian of ANDREW DAVIS
 6
     vs.
 7
     CATAMOUNT DEVELOPMENT CORP.,
 8   CATAMOUNT DEVELOPMENT CORP., d/b/a
     CATAMOUNT SKI AREA
 9

10        DEPOSITION OF:  WILLIAM GILBERT, taken
     before Heather J. Davis, Certified Shorthand
11   Reporter and Notary Public, pursuant to Rule 30 of
     the Massachusetts Rules of Civil Procedure, at the
12   offices of CHARLES J. FERRIS, ESQUIRE, 500 Main
     Street, Great Barrington, Massachusetts on
13   February 27, 2006, commencing at 9:56 AM.

14
     APPEARANCES:
15

16   (SEE PAGE TWO)

17

18

19              Heather J. Davis
                Registered Merit Reporter
20

21

22

23              DAVIS & MITCHELL
                 P.O. Box 1367
24            Pittsfield, MA 01202
     Tel. (413) 499-0035    Fax (413) 499-7823
```


EXHIBIT B

1  another person designated as custodian of records
2  at the corporation?
3      A.   Yeah.  About half a dozen people work
4  in the office.
5      Q.   And they all report to you?
6           MS. CARLEEN:  Objection.
7           THE WITNESS:  Yes.  Yes.
8      Q.   (BY MR. FERRIS)  Okay.  Has
9  Catamount produced all documents in its
10 possession regarding this accident?
11          MS. CARLEEN:  Objection.
12          THE WITNESS:  Yes.  All that we
13 have.
14     Q.   (BY MR. FERRIS)  Okay.  Has
15 Catamount produced all photographs of the
16 accident site in its possession?
17          MS. CARLEEN:  Objection.  Go
18 ahead.
19          THE WITNESS:  Yes.  But I think
20 that primarily the Plaintiff --
21          MS. CARLEEN:  Bill, just answer
22 the question.
23          THE WITNESS:  Any photographs we
24 had we have supplied to you.

1      Q.    (BY MR. FERRIS)    Well, okay.  I'm
2  just going to represent to you that I haven't
3  seen any photographs taken by Catamount.  Did you
4  or did -- withdrawn.
5            Did Catamount Development
6  Corporation take any photographs of the accident
7  site on the day of the accident?
8      A.    No.
9      Q.    Did it take any photographs of the
10 accident site shortly after the accident?
11     A.    Yes.
12     Q.    Okay.  Who took the photographs?
13     A.    I believe Richard Edwards.
14     Q.    And who is Richard Edwards?
15     A.    He's the vice president of the
16 company.
17     Q.    What are his responsibilities at
18 Catamount?
19     A.    Vice president.
20           MS. CARLEEN:  Object to the form.
21 Go ahead.
22           THE WITNESS:  He's an owner.
23     Q.    (BY MR. FERRIS)  Does he have any
24 other job responsibilities at Catamount?

```
 1         A.    Yes.  He parks cars on weekends.  The
 2   ski school is primarily his responsibility.  And
 3   he's very active with marketing.
 4         Q.    Okay.  Do you know approximately how
 5   many photographs Mr. Edwards took?
 6         A.    No.
 7         Q.    Have you ever seen them?
 8         A.    I know that I have photographs in my
 9   file, which I don't have here --
10         Q.    Okay.
11         A.    -- that I think he took.
12         Q.    Has anybody else taken any
13   photographs, that you're aware of, on behalf of
14   Catamount Development Corporation?
15               MS. CARLEEN:  Object to the form.
16               THE WITNESS:  I don't know that.
17               MR. FERRIS:  I'm just going to
18   note, for the record, that the subpoena, which
19   was served upon the Defendant, asked for
20   production of all photographs of the accident
21   site.  No objection to the subpoena was filed.
22   No photographs have been produced.  I will not be
23   closing this deposition until photographs are
24   produced.
```

1           MS. CARLEEN:  I object to the
2  characterization.  You haven't asked him when the
3  photographs were taken and they may be subject to
4  a privilege, which I believe was claimed in the
5  production response that we initially sent to
6  you.
7       Q.   (BY MR. FERRIS)  Okay.  Have you
8  brought with you any documents today?
9       A.   No, I have not.
10      Q.   Okay.
11          MS. CARLEEN:  I'd just like to
12  state for the record that a similar request for
13  production was propounded to Catamount earlier
14  and all of the responsive documents were
15  produced.
16          MR. FERRIS:  Well, subject to a
17  wide range of objections.
18          MS. CARLEEN:  Anything that we
19  objected to would have been identified, though,
20  if we were claiming a privilege to it.
21      Q.   (BY MR. FERRIS)  Does Catamount --
22  withdrawn.
23          Do you use any e-mail to
24  communicate with anybody at Catamount?

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

CRAIG DAVIS, as parent and natural )
guardian of ANDREW DAVIS, )       CIVIL ACTION
                     Plaintiff, )       No. 05-30011-MAP

  -against- )

CATAMOUNT DEVELOPMENT CORP., )
CATAMOUNT DEVELOPMENT CORP, )
d/b/a CATAMOUNT SKI AREA, )
                     Defendants. )

---

## SUBPOENA DUCES TECUM

**TO:** 1. Defendant, Catamount Development Corp. d/b/a Catamount Ski Area by its Custodian of Documents.
2. Bud Gardner, of Hillsdale NY (or Lakeville, CT)
3. Judy Gardner of Hillsdale, NY (or Lakeville CT)
4. Joe Boyle, of Bronx, NY
5. Rob Brousseau, of Philmont, NY
6. Rick Schroepel, of Hollowville, NY
7. Steven Adams, of Hudson, NY
8. Ross Fenn, of Germantown, NY
9. William Gilbert, Managing Agent of Catamount

**YOU ARE HEREBY COMMANDED** to produce the following documents at the time of your deposition to take place at the offices of Plaintiff's counsel, Charles J. Ferris, 500 Main Street, Great Barrington, MA 01230.

### DEFINITIONS

For the purpose of this subpoena the following words shall be deemed to have the respective meanings as used herein:

(A) "Documents" means all writings of any kind, including the originals and non-identical copies, whether different or otherwise (including, without limitation, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books inter- and intra-office communications, notations of any sort of conversations, notations of any sort of other communications, bulletins, printed matter, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind (including, without limitation,



photographs, charts, graphs, microfilm, recordings, etc.) and any electronic, mechanical or electric records of representations of any kind (including, without limitation, audio, video and computer tapes, cassettes, discs, records, etc.).

(B) "Accident" refers to the accident involving Andrew Davis at Catamount Ski Area on January 25, 2004.

(C) "Catamount" means Defendant Catamount Development Corp. d/b/a Catamount Ski Area, the corporation operating Catamount Ski Area, including its stockholders, officers, directors, employees, partners, attorneys, representatives, agents, subsidiaries, affiliates, divisions, related companies, or any entity through which it conducts business, either alone or jointly with others.

## DOCUMENTS TO BE PRODUCED
[By all witnesses, if in your possession custody or control]

1. Any Report describing the Accident.

2. All communications, correspondence or e-mail between you and Catamount or Craig, Elizabeth or Andrew Davis or any witnesses concerning the Accident or your testimony.

3. Copies of any statements you made regarding the Accident.

4. Copies of your paystubs and W-2's and 1099's from Catamount for the years 2003 and 2004.

5. All documents, including but not limited to manuals, memos, logs and reports dealing with maintenance of Catamount Ski Area and/or and /or inspection of the trails and/or safety precautions to be taken by the staff in effect or usage by Catamount Ski Area since January 1, 2000.

6. All accident reports relating to other ski accidents or injuries occurring at Catamount from the period December 1, 2003.

7. All trail maps describing the Catamount Ski Area as it existed on January 25, 2004.

8. Copies of lift tickets in use on January 25, 2004.

9. Copies of any warning signs allegedly posted at Catamount Ski Area on January 25, 2004 which Defendant alleges relates to this Accident.

10. All topographical maps of the Catamount Ski Area.

11. All documents concerning legal duties imposed upon Catamount by regulations of the Massachusetts Recreational Tramway Board or Chapter 143 of the General Laws of Massachusetts.

12. All documents showing which Catamount employees were on the premises on January 25, 2004 (excluding ski rental, ski shop, and cafeteria workers, unless they witnessed Plaintiff's Accident or spoke with Plaintiff or his family members about the Accident, or inspected the site of the Accident).

13. All statements or communications of any witnesses to the Accident raised in the Complaint.

14. All organizational charts showing staff names or departments and the chain of responsibility of staff members.

15. Corporate minutes concerning the safety procedures at Catamount, the Accident or youth racing teams.

16. Documents concerning communications with auditors or accountants relating or referring to the Accident or youth racing teams.

17. All documents upon which any expert whom Plaintiff expects to call as a witness at trial is likely to rely in support of any fact or opinion about which that person is expected to testify.

18. Any and all written agreements, applications, releases between the Plaintiff and the Defendant in this suit.

19. Any and all police reports and any other documents prepared by any governmental agency regarding the incident which is the subject matter of this lawsuit and the investigation thereof.

20. Any and all:

    a. investigative reports;

    b. witness statements;

c.

    c. drawings, diagrams, maps or photographs of the Accident site (before or after the Accident);

    d. signed or unsigned statements or transcribed statements signed or unsigned; and

    e. any other investigative materials prepared or obtained as a result of the incident which is the subject matter of this suit.

21. Any and all communications, correspondences, notices, and agreements between the

Plaintiff and Defendant regarding the incident which is the subject matter of this suit.

22. All documents containing the names, addresses and/or telephone numbers of other children who were participating in the ski class or racing team that Plaintiff was a part of at the time of the Accident, including but not limited to applications and releases, whether or not these children were present on the date of the Accident.

23. All documents containing the names, addresses and/or telephone numbers of the instructors, and/or coaches of the class or racing team described above, whether or not present on the date of the Accident.

24. All documents concerning or describing the class or racing team that Plaintiff was participating in at the time of the Accident, including but not limited to brochures, schedules, manuals and exercise descriptions.

25. All attendance sheets or other documents showing which children in the racing class or team. and coaches were present at Catamount on the date of the Accident.

26. All documents which Catamount contends support any waiver or release of claims by Plaintiff

27. Copies of all documents which refer or relate to any of the persons identified in Item I.A through I.L in Defendant's Initial Disclosure Pursuant to Rule 26(a)(I), and all youth racing team coaches including but not limited to personnel files, resumes, job applications, performance reviews, payroll information, job descriptions, contracts, W-2's, 1099°s (Bud Gardner, Judy Gardner, Joe Boyle, Role Brousseau, Rick Schroepel, Elizabeth Davis, Craig Davis, Steven Adams, and Ross Fenn, David Anderson, Sean Barry, John Grieser, Elizabeth Dennis).

1. _____

28. Any inspection reports relating to examination of trails, or any documents concerning who was responsible for such inspections for the date of the Accident, and any other date in January, 2004.

29. Copies of all communications, correspondence, reports, memos, to or from any of the people referred to above regarding the Accident.

30. All documents identified in response to Plaintiff's First Set of Interrogatories.

31. Any photographs of the Accident site.