UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * *
                               *
CRAIG DAVIS, as parent and     *
natural guardian of            *
ANDREW DAVIS,                  *
Plaintiff,                     *
                               *
vs.                            *   CIVIL ACTION
                               *   No. 05-30011-MAP
CATAMOUNT DEVELOPMENT CORP.,   *
CATAMOUNT DEVELOPMENT CORP.    *
d/b/a CATAMOUNT SKI AREA,      *
Defendants.                    *
                               *
                               *
* * * * * * * * * * * * * * * *
```

### DEFENDANT CATAMOUNT DEVELOPMENT CORP.'S OPPOSITION TO PLAINTIFF'S MOTION TO CONTINUE DEPOSITION AND TO COMPEL ANSWER TO DEPOSITION QUESTIONS AND CROSS MOTION FOR A PROTECTIVE ORDER PURSUANT TO RULE 30(d)(4)

Now comes the defendant Catamount Development Corp. ("Catamount"), and opposes the plaintiff's motion on the grounds that the motion seeks disclosure of irrelevant information that is designed to violate privacy interests and that is designed to harass, annoy, and oppress William Gilbert.

Defendant respectfully requests that this Court grant a protective order pursuant to Rule 30(d)(4) of the Federal Rules of Civil Procedure to preclude plaintiffs from compelling William Gilbert to appear a second time for deposition for purposes of answering irrelevant questions which are calculated to harass and to invade Mr. Gilbert's privacy. As grounds for its opposition and cross motion, the defendant states the following.

#### Introduction

In this action, the plaintiff seeks to recover damages arising out of an accident that occurred when the plaintiff was skiing at Catamount Ski Area, which is operated by Catamount Development Corp. At the deposition of William Gilbert, President of Catamount Development Corp., the plaintiff's counsel sought to determine the witness' salary and number of shares of Catamount Development Corp. held by Mr. Gilbert. Counsel for defendant properly objected to that inquiry, and is now seeking a

protective order to enjoin plaintiff from harassing Mr. Gilbert and violating his privacy.

## Argument

### The Plaintiff is Not Entitled to Obtain Information Concerning the Salaries of the Defendant's Employees

Catamount respectfully submits that the plaintiff's motion should be denied, and that its cross motion for a protective order should be granted. It was appropriate for counsel to instruct Mr. Gilbert not to answer the questions regarding his salary. The instruction was necessary to protect Mr. Gilbert from harassment, annoyance, and oppression and to bring its cross motion for a protective order pursuant to Rule 30(d)(4).

The application of Rule 30(d)(4) is addressed to the trial judge's discretion. *Poliquin v. Garden Way, Inc.*, 989 F.2d 527 (1993); *Marrese v. American Academy of Orthopaedic Surgeons*, 692 F.2d 1083, 1088 (7th Cir. 1982).

Catamount's profits are immaterial because it is well established that the wealth of a defendant is not relevant to liability. *Downey v. Union Trust Co. of Springfield*, 312 Mass. 405 (1942). Mr. Gilbert's or any other officer's salary figure, or the number of shares held by the officers, has no relevance to the plaintiff's claim that he was injured while skiing at Catamount.

Plaintiff claims that he needs the salary information to show that Mr. Gilbert is biased in favor of Catamount. This contention is specious. At deposition, Mr. Gilbert stated that he works for Catamount, that he owns shares of Catamount, that he is an officer of the corporation, and that he receives a salary from Catamount. (See deposition of W. Gilbert, page 8, lines 2-3, deposition of W. Gilbert, page 48, line 18; deposition of W. Gilbert, page 51, line 20). Disclosure of Mr. Gilbert's salary figure and share in profits would not serve any additional purpose under plaintiff's theory of relevance. To the extent that plaintiff argues that the degree of bias is proportional to the degree of Mr. Gilbert's financial stake in the company, this argument is speculative at best. Further, this minuscule difference, if there is any, is de minimis. If the burden of answering certain questions at deposition outweighs the value of the answers, a protective order is appropriate. *Saylavee LLC v. Hockler*, F. Supp. 2d, 2005 WL 1398653 (D.Conn).

The cases cited by plaintiff in his motion to compel further testimony are inapposite. In *U.S. v. International Business Machines ("IBM") Corporation*, 66 F.R.D. 215 (1974), an anti-trust

case, the prospective deponents were not parties to the litigation, nor were they representatives of defendant IBM Corp. *Id.* at 217. The court emphasized the financial *benefits* that could inure to the prospective deponents if their testimony *harmed* defendant IBM Corp., and therefore allowed IBM Corp.'s motion to compel answers regarding the deponents' salaries and interest in the company. *Id.* at 217. Here, by contrast, plaintiff wishes to show that Mr. Gilbert, as a representative of a party to the litigation, may testify *favorably* to Catamount. As noted above, it is already undisputed that Mr. Gilbert works for Catamount, that he is paid by Catamount, and that he owns shares of Catamount. The reasoning in *IBM* is not applicable to a case involving a plaintiff who was injured at a ski resort operated by a primarily family owned corporation.

Plaintiffs also cite *Cameron v. Norfolk & Dedham Mutual Fire Insurance Co., Inc.*, which is similarly inapposite. *Cameron* does not involve a motion to compel deposition testimony. There, the defendant was sued when its employee, allegedly drunk, operated his vehicle and collided with a motorcycle. The court held that evidence that defendant had paid for its employee's criminal legal fees was discoverable. Plaintiff has not cited any case law which requires disclosure at deposition of specific salary information given the foregoing circumstances.

In short, requiring Mr. Gilbert to disclose his salary would subject him to harassment, oppression, and annoyance, and would reveal personal and private information that is completely irrelevant to the plaintiff's claim and that is irrelevant for purposes of showing bias.

### Conclusion

For the foregoing reasons, defendant Catamount respectfully submits that its motion for a protective order should be granted.

Respectfully,
Defendant,
Catamount Development Corp.

By its attorneys,

/s/ William L. Keville, Jr.
William L. Keville, Jr.
BBO# 546525
Margaret M. Carleen
BBO # 655141
MELICK, PORTER & SHEA, LLP
28 State Street
Boston, MA 02109-1775
(617) 523-6200

**Page 5**

1  It is further agreed that the deponent will
2  not waive the reading and signing of the
3  deposition and the sealing of said deposition will
4  be waived.
5
6  It is further agreed by and between the
7  parties that notification to all parties of the
8  receipt of the original deposition transcript is
9  also hereby waived.
10
11  *****
12
13  WILLIAM GILBERT, the Deponent, having
14  been first identified by license and duly sworn,
15  deposes and says as follows:
16
17  **DIRECT EXAMINATION BY MR. FERRIS**
18  Q. (BY MR. FERRIS) Good morning,
19  Mr. Gilbert, my name is Charles Ferris, I
20  represent Andrew Davis in connection with a
21  lawsuit pending against Catamount Development
22  Corporation. I'm going to be asking you some
23  questions. If there's any question that you
24  don't understand, please ask me and I'll rephrase

DAVIS & MITCHELL
(413) 499-0035

**Page 6**

1  it. And if you need to take a break at any point
2  in time, let me know as well. Is that okay?
3  A. Yes.
4  Q. And it's just important to answer
5  questions with words rather than nods of the head
6  so that the court reporter can accurately record
7  your answers. It's also important to let me
8  finish my question before starting your answer so
9  that the record would read clearly. Do you
10  understand that?
11  A. Yes.
12  Q. Could you state your name and address
13  for the record, please?
14  A. **William Gilbert, 1136 Barker Road,**
15  **Pittsfield, Massachusetts.**
16  Q. Okay. I'm going to show you two
17  exhibits that have previously been marked as 51
18  and 52.
19  A. **I don't think I ever saw this.**
20  Q. Okay. I don't think there's a
21  question pending at the moment.
22  Have you ever seen Exhibit Number
23  51 before?
24  A. **Yeah. This is -- yes, I believe I**

DAVIS & MITCHELL
(413) 499-0035

**Page 7**

1  saw that.
2  Q. But you don't believe you've seen
3  Exhibit 52 before?
4  A. **That's correct.**
5  Q. Okay.
6  MS. CARLEEN: Bill, why don't
7  you -- if he could just take a look at this one
8  again.
9  Q. (BY MR. FERRIS) There's a subpoena
10  attached to that.
11  A. **I believe there's been responses, is**
12  **there not.**
13  Q. Well, have you ever seen -- now that
14  you've looked at Exhibit 52 and subpoena
15  language, did you in fact ever review the
16  subpoena before?
17  A. **I believe I did.**
18  Q. Okay. Mr. Gilbert, you're here today
19  to testify on behalf of Catamount Development
20  Corporation, is that correct?
21  A. Yes.
22  Q. And what is your position with
23  Catamount Development Corporation?
24  MS. CARLEEN: Object to the form.

DAVIS & MITCHELL
(413) 499-0035

**Page 8**

1  Go ahead.
2  THE WITNESS: President of the
3  corporation and general manager.
4  Q. (BY MR. FERRIS) Okay. And are you
5  here also in response to Exhibit 51, which asked
6  for Catamount to produce a person with knowledge
7  concerning certain items listed on Exhibit 51?
8  MS. CARLEEN: He's here to
9  testify with respect to all three categories
10  listed on the notice.
11  MR. FERRIS: Okay. I'd
12  appreciate it if you'd let him answer the
13  questions, but thank you.
14  Q. (BY MR. FERRIS) So you're here to
15  testify as a person designated with knowledge of
16  the information requested on Exhibit 51 and then
17  you're also here to testify as a custodian of
18  documents on behalf of Catamount. And then also
19  in your capacity as managing agent of Catamount,
20  is that correct?
21  A. Yes.
22  MS. CARLEEN: Objection.
23  Q. (BY MR. FERRIS) You can answer.
24  MS. CARLEEN: I think he did.

DAVIS & MITCHELL
(413) 499-0035

**Page 45**

1  correct?
2  A.  Correct.
3  Q.  Okay. Have you retained an expert to
4  view the accident site?
5       MS. CARLEEN: Objection.
6       THE WITNESS: That's me. No, I
7  have not.
8  Q.  (BY MR. FERRIS) So at the current
9  time, neither Catamount nor its attorneys have
10 retained a ski industry expert to participate in
11 this litigation?
12 A.  That's correct.
13      MS. CARLEEN: Objection.
14 Q.  (BY MR. FERRIS) Now, what is your
15 experience in the ski industry, Mr. Gilbert?
16      MS. CARLEEN: Object to the form.
17      THE WITNESS: I took over a small
18 ski area in Carmel, New York called Fahnestock
19 Ski Area, F-A-H-N-E-S-T-O-C-K, in 1955. And then
20 went on to two more ski areas. Built one.
21 Q.  (BY MR. FERRIS) Which one did you
22 build?
23 A.  Sterling Forest. And then in 1973
24 took over Catamount.

**Page 46**

1  Q.  And when you say in 1973 you took
2  over Catamount, did you purchase Catamount?
3  A.  That's correct.
4  Q.  Did Sterling Forest close?
5  A.  We sold Sterling Forest --
6  Q.  Okay.
7  A.  -- back in 1970. And we gave up
8  operating the other two about the same time.
9  Q.  The other two? I have Fahnestock.
10 What's the other one?
11 A.  Silvermine.
12 Q.  Where was Silvermine?
13 A.  Bear Mountain, New York.
14 Q.  Okay. And when you say we, do you
15 have some partners that have been involved in
16 these ventures with you?
17 A.  Don Edwards is my partner.
18 Q.  Is he a co-owner of Catamount?
19 A.  Yes.
20 Q.  And --
21 A.  Richard is his son.
22 Q.  Yes. I understand that. Is Richard
23 Edwards a co-owner as well?
24 A.  Yes.

**Page 47**

1  Q.  Okay. Any other owners?
2       MS. CARLEEN: Objection.
3       THE WITNESS: My son Tom.
4  Q.  (BY MR. FERRIS) Okay. Have you had
5  any education relating to ski area operation?
6       MS. CARLEEN: Object to the form.
7       THE WITNESS: Yeah. We have
8  panels on a semiannual basis with the ski
9  industry.
10 Q.  (BY MR. FERRIS) What kind of panels?
11 A.  All various, on all aspects of the
12 ski industry.
13 Q.  And so you attend these panels?
14 A.  Yes.
15 Q.  Okay. And who -- withdrawn.
16      Is there an organization that
17 runs these panel discussions?
18 A.  The National Ski Area Association, as
19 well as New England Ski Area Association.
20 Q.  When was the last one that you
21 attended?
22 A.  Two weeks ago.
23 Q.  And where was that?
24 A.  Killington.

**Page 48**

1  Q.  What was the subject of that
2  discussion?
3       MS. CARLEEN: Object to the form.
4       THE WITNESS: Terrain parks.
5  Q.  (BY MR. FERRIS) For snowboarders?
6       MS. CARLEEN: Objection.
7       THE WITNESS: Terrain parks are
8  for skiers and snowboards.
9  Q.  (BY MR. FERRIS) Okay. Any other
10 education -- withdrawn.
11      Have you had any other education,
12 other than these semiannual panels, with respect
13 to operating ski areas?
14 A.  I can't think of them. Most likely I
15 have.
16 Q.  Okay. Now, you said you own a
17 percentage of Catamount Development Corp.?
18 A.  Yes.
19 Q.  What percent do you own?
20      MS. CARLEEN: Objection. This is
21 not relevant.
22      MR. FERRIS: It relates to his
23 motivation and credibility.
24      MS. CARLEEN: Objection. I think

DAVIS & MITCHELL
(413) 499-0035

**Page 49**

```
10:52:07AM  1    it's completely irrelevant and I object to this
10:52:06AM  2    line of questioning.
10:52:14AM  3         Q.  (BY MR. FERRIS)  You can answer.
            4         A.  I think she answered.
10:52:17AM  5         Q.  No.  She -- I haven't heard your
10:52:25AM  6    attorney direct you not to answer, and I would
10:52:26AM  7    just cite Rule 30, which states that a person may
10:52:37AM  8    instruct the deponent not to answer only when
10:52:39AM  9    necessary to preserve a privilege, enforce a
10:52:42AM 10    limitation directed by the Court, or to present a
10:52:44AM 11    motion under Rule 30(d)(4).  So I don't believe
10:52:46AM 12    that she's telling you not to answer.
10:52:53AM 13             MS. CARLEEN:  Could you repeat
10:52:54AM 14    the question or read back the question, please?
10:52:56AM 15         Q.  (BY MR. FERRIS)  What percentage of
10:52:57AM 16    Catamount Development Corporation do you own?
10:53:03AM 17             MS. CARLEEN:  Yeah.  I'm going to
10:53:04AM 18    instruct him not to answer that question.
10:53:10AM 19         Q.  (BY MR. FERRIS)  What percentage of
10:53:17AM 20    Catamount Development Corporation does your son
10:53:19AM 21    own?
10:53:21AM 22             MS. CARLEEN:  Same instruction.
10:53:26AM 23         Q.  (BY MR. FERRIS)  What is your salary
10:53:28AM 24    at Catamount Development Corporation?
```

**Page 50**

```
10:53:30AM  1             MS. CARLEEN:  Same instruction.
10:53:32AM  2    It's completely irrelevant and it's being asked
10:53:35AM  3    to harass.
            4             MR. FERRIS:  It is most
10:53:37AM  5    definitely not being asked to harass.  I have no
10:53:40AM  6    particular interest in this, other than trying to
10:53:42AM  7    determine what the credibility of this witness
10:53:45AM  8    is.
            9             MS. CARLEEN:  But the type of
10:53:46AM 10    answer you're trying to evoke would create more
10:53:49AM 11    prejudice than anything probative here, so I am
10:53:51AM 12    instructing him not to answer the question.
10:53:54AM 13    That's my position, absent a court order.
10:53:57AM 14             MR. FERRIS:  Okay.  I'll need
10:54:11AM 15    that part of the transcript, also.
10:54:21AM 16         Q.  (BY MR. FERRIS)  In addition to
10:54:22AM 17    receiving a salary, do you share in the income of
10:54:25AM 18    Catamount Development Corporation?
10:54:25AM 19             MS. CARLEEN:  Same instruction.
10:54:28AM 20             THE WITNESS:  No.
10:54:28AM 21         Q.  (BY MR. FERRIS)  You don't share in
           22    the income of Catamount Development Corporation?
10:54:34AM 23             THE WITNESS:  I'm sorry?
10:54:35AM 24             MS. CARLEEN:  That's fine.  If
```

**Page 51**

```
10:54:36AM  1    you're comfortable answering, that's fine.
10:54:38AM  2         Q.  (BY MR. FERRIS)  Do you receive a
10:54:38AM  3    salary?
10:54:41AM  4             MS. CARLEEN:  Same instruction.
10:54:42AM  5             MR. FERRIS:  So I'm not entitled
10:54:45AM  6    to know whether your witness is paid as a paid
10:54:47AM  7    employee of Catamount Development Corporation?
10:54:48AM  8             MS. CARLEEN:  What are you trying
10:54:49AM  9    to get here, how much his salary is?
10:54:52AM 10             MR. FERRIS:  I'm asking
10:54:53AM 11    questions --
10:54:53AM 12             MS. CARLEEN:  You're asking --
10:54:54AM 13    phrase your question with regard to Catamount.
10:54:55AM 14    Does he get paid by Catamount, is that what
10:54:56AM 15    you're asking?  I don't know what you're asking.
10:55:01AM 16         Q.  (BY MR. FERRIS)  Well, do you receive
10:55:02AM 17    a salary from Catamount Development Corporation?
10:55:06AM 18             MS. CARLEEN:  You can answer that
10:55:06AM 19    yes or no.
10:55:07AM 20             THE WITNESS:  Yes.
10:55:08AM 21         Q.  (BY MR. FERRIS)  Do you receive a
10:55:08AM 22    salary from any other business entities?
10:55:16AM 23             MS. CARLEEN:  Objection.
10:55:17AM 24             THE WITNESS:  No.
```

**Page 52**

```
10:56:18AM  1         Q.  (BY MR. FERRIS)  Okay.  Are there
10:56:19AM  2    any other business entities or organizations
10:56:21AM  3    involved in the operation of Catamount
10:56:24AM  4    Development Corporation?
10:56:24AM  5         A.  No.
10:56:26AM  6         Q.  Okay.  So you do receive a salary but
10:56:29AM  7    you will not state what that salary is, is that
10:56:21AM  8    correct?
10:56:31AM  9         A.  That's correct.
10:55:32AM 10             MS. CARLEEN:  Correct.
10:56:35AM 11             MR. FERRIS:  Okay.
10:56:04AM 12         Q.  (BY MR. FERRIS)  Does your son also
10:56:02AM 13    receive a salary?
10:56:04AM 14             MS. CARLEEN:  Same objection.
10:56:04AM 15         Q.  (BY MR. FERRIS)  Does he receive a
10:56:04AM 16    salary?
10:56:05AM 17         A.  Yes.
10:56:04AM 18         Q.  Okay.  Now, in addition to fencing
10:56:28AM 19    that's attached to wooden posts, does Catamount
10:56:30AM 20    use any fencing that's attached to any break-away
10:56:34AM 21    or flexible posts?
10:56:36AM 22             MS. CARLEEN:  Object to the form.
10:56:39AM 23             THE WITNESS:  Yes.
10:56:40AM 24         Q.  (BY MR. FERRIS)  Okay.  What are the
```

DAVIS & MITCHELL
(413) 499-0035