```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                     DISTRICT OF MASSACHUSETTS
```

* * * * * * * * * * * * * * *
*
CRAIG DAVIS, as parent and  *
natural guardian of          *
ANDREW DAVIS,                *
    Plaintiff,               *
                             *
vs.                          *     CIVIL ACTION
                             *     No. 05-30011-MAP
CATAMOUNT DEVELOPMENT CORP., *
CATAMOUNT DEVELOPMENT CORP.  *
d/b/a CATAMOUNT SKI AREA,    *
    Defendants.              *
                             *
                             *
* * * * * * * * * * * * * * *

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, Catamount Development Corp. ("Catamount") hereby moves for summary judgment on the ground that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Specifically, Catamount asserts that it is entitled to summary judgment because it had no duty to prevent the plaintiff's injuries because they resulted from an inherent risk of skiing or the plaintiff had assumed the risk that he would suffer such an injury by participating in the sport.

**Concise Statement of Facts As To Which There Is No Material Issue of Fact**

1. The minor plaintiff, Andrew Davis ("Andrew"), was born on February 18, 1996, and the accident occurred on January 25, 2004. (EX. 1, Deposition of Andrew Davis, pp. 6-7).

2. Andrew has skied since he was four years old and generally skied twenty times or more times per season. (EX. 5, Plaintiff's Responses to the First Set of Interrogatories from Defendant, Catamount Development Corp., n. 18).

3. Andrew was an advanced, almost expert skier. (EX. 3, Deposition of Elizabeth Dennis, pp. 10-11).

4. At the time of the accident, Andrew was practicing with the Inter Club; his sister Elizabeth Davis [Dennis] was the supervisor of the team and his father Craig Davis was the coach (EX. 4, Defendant Catamount Development Corp.'s Answers to Plaintiff's Interrogatories, n. 8).

5. He was familiar with the Skiers' Responsibility Code, and he knew that skiers were supposed to ski so that they could avoid objects or people on the hill below them. (EX. 1, Deposition of Andrew Davis, pp. 11-12).

6. Andrew's father, Craig Davis, taught Andrew about the Skier's Responsibility Code and instructed him to always stay in control and be able to stop and avoid other people and objects. (EX. 2, Deposition of Craig Davis, pp. 25, 32-33).

7. Andrew understood that there are inherent risks in skiing, including colliding with other skiers or hitting trees or

obstacles. (EX. 1, Deposition of Andrew Davis, p. 12).

8. Andrew's father taught him that there were inherent risks in downhill skiing. (EX. 2, Deposition of Craig Davis, p. 40).

9. Andrew learned from his father and his sister that skiers are supposed to ski in control. (EX. 1, Deposition of Andrew Davis, pp. 13-14).

10. EX. 12B shows the crossover from Catamount Trail to On Stage trail where the accident occurred. (EX. 1, Deposition of Andrew Davis, pp. 30-31). (EX. 12B shows the crossover area. (EX. 2, Deposition of Craig Davis, pp. 125-126)).

11. The accident occurred as Andrew tried to ski between the bush and the fence depicted on EX. 12B and came in contact with the fence post shown on EX. 12C. (EX. 2, Deposition of Craig Davis, pp. 116, 126).

12. The fence post was not on the trail. (EX. 2, Deposition of Craig Davis, p. 96).

13. Prior to the accident, Andrew had crossed over from Catamount to On Stage without any problem. (EX. 1, Deposition of Andrew Davis, p. 24).

14. Prior to the accident, Andrew had seen the fence depicted in photograph B. (EX. 1, Deposition of Andrew Davis, pp. 46-47).

15. Catamount put the fence there because the lift was right above that area, and if there was a great deal of snow, a skier could hit someone riding up on the lift. (EX. 6, Deposition of William Gilbert, February 27, 2006, pp. 57-58, 66). The fence

showed that the area underneath the lift was out of bounds. (EX. 6, Deposition of William Gilbert, February 27, 2006, p. 66).

16. Catamount placed plainly visible orange discs on the fence posts. (EX. 6, Deposition of William Gilbert, February 27, 2006, p. 77).

17. Prior to the accident, Andrew had skied Catamount and crossed over onto On Stage "alot". (EX. 1, Deposition of Andrew Davis, p. 24).

18. Andrew admitted that there was more space on the uphill side of the bush, as compared to the space between the bush and the fence. (EX. 1, Deposition of Andrew Davis, pp. 32-33).

19. Prior to the accident, Andrew's father rode the chair lift that went over the area where the accident occurred and did not observe any conditions that would be hazardous to skiers. (EX. 2, Deposition of Craig Davis, pp. 63-64). If he had seen a hazardous condition, he probably would have brought it to the attention of someone at the ski area. (EX. 2, Deposition of Craig Davis, p. 65).

20. For weeks prior to the accident, Andrew's father had seen the two-by-four in an angled position shown on EX. 12, but he had not brought the condition to anyone's attention. (EX. 2, Deposition of Craig Davis, p. 74).

21. A skier approaching the crossover between Catamount Trail and On Stage trail has several options: (1) stay on Catamount; (2) cross over between the bush and the tree line; (3) cross

between the bush and the fencepost, and (4) stop. (EX. 2, Deposition of Craig Davis, pp. 126-129). See also EX. 62, photograph depicting the trail, the fence, and the orange lollipop warning.

22. Elizabeth Dennis, Andrew's sister, taught a class that included Andrew. (EX. 3, Deposition of Elizabeth Dennis, p. 9).

23. She instructed him to ski in control. (EX. 3, Deposition of Elizabeth Dennis, p. 12).

24. While Elizabeth Dennis was on a chair lift, she observed the fences in the crossover area, and they looked the same as always. (EX. 3, Deposition of Elizabeth Dennis, p. 18).

25. Prior to the accident, she did not complain about the crossover to anyone at Catamount or give any warnings to anyone in the group about those conditions. (EX. 3, Deposition of Elizabeth Dennis, p. 36).

### Statement Pursuant to Local Rule 7.1(A)(2)

Counsel for Catamount certifies that he has conferred with counsel for the plaintiff good faith, and was unable to resolve or narrow the issues presented by this motion.

In support of this motion, Catamount relies on the following exhibits:

1. Excerpts from the deposition of Andrew Davis;
2. Excerpts from the deposition of Craig Davis;

3. Excerpts from the deposition of Elizabeth Dennis;

4. Defendant Catamount Development Corp.'s Answers to Plaintiff's Interrogatories;

5. Plaintiff's Responses to the First Set of Interrogatories from Defendant, Catamount Development Corp.;

6. Excerpts from the deposition of William Gilbert;

7. Order granting summary judgment in *Brinker v. Hunter Mountain Ski Bowl*, CAL No. 03-10023;

8. Color photographs of Catamount Ski Area, marked 12A-12D;

9. Affidavit of William L. Keville, Jr.;

12. Exhibit 12 from the depositions in this case;

62. Exhibit 62 from the deposition of William Gilbert;

By its attorneys,

*William L. Keville Jr.* (signature)
William L. Keville, Jr.
BBO# 546525
Andre Sansoucy
BBO# 441410
Gregory M. Boucher
BBO# 665212
MELICK, PORTER & SHEA, LLP
28 State Street
Boston, MA 02109-1775
(617) 523-6200

Dated: September 22, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.