UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * *
                              *
CRAIG DAVIS, as parent and    *
natural guardian of           *
ANDREW DAVIS,                 *
    Plaintiff,                *
                              *
vs.                           *     CIVIL ACTION
                              *     No. 05-30011-MAP
CATAMOUNT DEVELOPMENT CORP.,  *
CATAMOUNT DEVELOPMENT CORP.   *
d/b/a CATAMOUNT SKI AREA,     *
    Defendants.               *
                              *
                              *
* * * * * * * * * * * * * * *
```

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Introduction.**

In this case, the minor plaintiff seeks to recover damages for injuries he suffered when he collided with a fence post adjacent to a trail while skiing at a ski area operated by the defendant. The defendant, Catamount Development Corp. ("Catamount"), is moving for summary judgment on the ground that it had no duty to prevent the plaintiff's injuries because they resulted from an inherent risk of skiing or the plaintiff had assumed the risk that he would suffer such an injury by participating in the sport. The defendant submits this brief in support of that motion.

**Concise Statement of Facts As To Which There Is No Material Issue of Fact**

1. The minor plaintiff, Andrew Davis ("Andrew"), was born on February 18, 1996, and the accident occurred on January 25, 2004. (EX. 1, Deposition of Andrew Davis, pp. 6-7).

2. Andrew has skied since he was four years old and generally skied twenty times or more times per season. (EX. 5, Plaintiff's Responses to the First Set of Interrogatories from Defendant, Catamount Development Corp., n. 18).

3. Andrew was an advanced, almost expert skier. (EX. 3, Deposition of Elizabeth Dennis, pp. 10-11).

4. At the time of the accident, Andrew was practicing with the Inter Club; his sister Elizabeth Davis [Dennis] was the supervisor of the team and his father Craig Davis was the coach (EX. 4, Defendant Catamount Development Corp.'s Answers to Plaintiff's Interrogatories, n. 8).

5. He was familiar with the Skiers' Responsibility Code, and he knew that skiers were supposed to ski so that they could avoid objects or people on the hill below them. (EX. 1, Deposition of Andrew Davis, pp. 11-12).

6. Andrew's father, Craig Davis, taught Andrew about the Skier's Responsibility Code and instructed him to always stay in control and be able to stop and avoid other people and objects. (EX. 2, Deposition of Craig Davis, pp. 25, 32-33).

7. Andrew understood that there are inherent risks in skiing, including colliding with other skiers or hitting trees or obstacles. (EX. 1, Deposition of Andrew Davis, p. 12).

8. Andrew's father taught him that there were inherent risks in downhill skiing. (EX. 2, Deposition of Craig Davis, p. 40).

9. Andrew learned from his father and his sister that skiers are supposed to ski in control. (EX. 1, Deposition of Andrew Davis, pp. 13-14).

10. EX. 12B shows the crossover from Catamount Trail to On Stage trail where the accident occurred. (EX. 1, Deposition of Andrew Davis, pp. 30-31; EX. 2, Deposition of Craig Davis, pp. 125-126)).

11. The accident occurred as Andrew tried to ski between the bush and the fence depicted on EX. 12B and came in contact with the fence post shown on EX. 12C. (EX. 2, Deposition of Craig Davis, pp. 116, 126).

12. The fence post was not on the trail. (EX. 2, Deposition of Craig Davis, p. 96).

13. Prior to the accident, Andrew had crossed over from Catamount to On Stage without any problem. (EX. 1, Deposition of Andrew Davis, p. 24).

14. Prior to the accident, Andrew had seen the fence depicted in photograph B. (EX. 1, Deposition of Andrew Davis, pp. 46-47).

15. Catamount put the fence there because the lift was right

3

above that area, and if there was a great deal of snow, a skier could hit someone riding up on the lift. (EX. 6, Deposition of William Gilbert, February 27, 2006, pp. 57-58, 66). The fence showed that the area underneath the lift was out of bounds. (EX. 6, Deposition of William Gilbert, February 27, 2006, p. 66).

16. Catamount placed plainly visible orange discs on the fence posts. (EX. 6, Deposition of William Gilbert, February 27, 2006, p. 77).

17. Prior to the accident, Andrew had skied Catamount and crossed over onto On Stage "alot". (EX. 1, Deposition of Andrew Davis, p. 24).

18. Andrew admitted that there was more space on the uphill side of the bush, as compared to the space between the bush and the fence. (EX. 1, Deposition of Andrew Davis, pp. 32-33).

19. Prior to the accident, Andrew's father rode the chair lift that went over the area where the accident occurred and did not observe any conditions that would be hazardous to skiers. (EX. 2, Deposition of Craig Davis, pp. 63-64). If he had seen a hazardous condition, he probably would have brought it to the attention of someone at the ski area. (EX. 2, Deposition of Craig Davis, p. 65).

20. For weeks prior to the accident, Andrew's father had seen the two-by-four in an angled position shown on EX. 12, but he had not brought the condition to anyone's attention. (EX. 2,

4

Deposition of Craig Davis, p. 74).

21. A skier approaching the crossover between Catamount Trail and On Stage trail has several options: (1) stay on Catamount; (2) cross over between the bush and the tree line; (3) cross between the bush and the fencepost, and (4) stop. (EX. 2, Deposition of Craig Davis, pp. 126-129). See also EX. 62, photograph depicting the trail, the fence, and the orange lollipop warning.

22. Elizabeth Dennis, Andrew's sister, taught a class that included Andrew. (EX. 3, Deposition of Elizabeth Dennis, p. 9).

23. She instructed him to ski in control. (EX. 3, Deposition of Elizabeth Dennis, p. 12).

24. While Elizabeth Dennis was on a chair lift, she observed the fences in the crossover area, and they looked the same as always. (EX. 3, Deposition of Elizabeth Dennis, p. 18).

25. Prior to the accident, she did not complain about the crossover to anyone at Catamount or give any warnings to anyone in the group about those conditions. (EX. 3, Deposition of Elizabeth Dennis, p. 36).

### Argument

**Catamount's Motion for Summary Judgment Should Be Granted Because the Plaintiff Assumed the Risk that He Would Suffer the Kind of Injury that Occurred and Because that Injury Resulted from an Inherent Risk of Skiing.**

Summary judgment is appropriate if the there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In particular, summary judgment is proper if the record establishes that the plaintiff does not have sufficient evidence to establish an essential element of his case. *See Kelly v. Marcantonio*, 187 F.3d 192, 198 (1999) ("Summary judgment will be properly entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (citation omitted). The evidence will be construed in the light most favorable to the party opposing the summary judgment motion. *Merchants Insurance Company of New Hampshire, Inc. v. United States Fidelity and Guaranty Co.*, 143 F.3d 5 (1998).

The plaintiff will apparently take the position that the accident occurred in New York so that New York law should apply. The court need not resolve the choice of law issue, however, because, Catamount is entitled to summary judgment regardless of which state's law applies.

6

The New York Legislature has recognized that skiing involves certain inherent risks. McKinney's General Obligations Law § 18-101 states, in part, that:

> downhill skiing, like many other sports, contains **inherent risks including**, but not limited to, the risks of personal injury or death or property damage, which may be caused by variations in terrain or weather conditions; surface or subsurface snow, ice, bare spots or areas of thin cover, moguls, ruts, bumps; other persons using the facilities; and rocks, forest growth, debris, branches, trees, roots, stumps or other **natural objects or man-made objects that are incidental to the provision or maintenance of a ski facility** in New York state ... (emphasis added).

The Legislature also recognizes that skiers have certain responsibilities, including "[t]o remain in constant control of speed and course at all times while skiing so as to avoid contact with plainly visible or clearly marked obstacles..." McKinney's General Obligations Law § 18-105 (4). Skiers are also required "[t]o obtain such education in the sport of skiing as the individual skier shall deem appropriate to his or her level of ability, including the familiarization with skills and duties necessary to reduce the risk of injury in such sport." McKinney's General Obligations Law § 18-106.

Under New York law, "by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation." *Morgan v. State of New York*, 90 N.Y.2d 471, 484, 685 N.E.2d 202, 208

7

(1997). Assumption of the risk helps and serves to define the standard of care under which a defendant's duty is defined and circumscribed "because assumption of risk in this form is really a principle of no duty, or no negligence and so denies the existence of any underlying cause of action." *Id.* at 485, 685 N.E.2d at 208.

Pursuant to this rule, "it is well settled that a ski area operator is relieved from liability for risks inherent in the sport of downhill skiing,..., when the participant is aware of, appreciates and voluntarily assumes those risks. Whether a participant is aware of and appreciates a particular risk must 'be assessed against the background of the skill and experience' of the participant." *DeLacy v. Catamount Development Corp.*, 302 A.D.2d 735, 735-736, 755 N.Y.S.2d 484, 485 (2003). Furthermore, "[i]t is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results" *Papa v. Russo*, 279 A.D.2d 744, 745, 719 N.Y.S.2d 723, 725-726 (2001)(citation omitted).

The defendant is entitled to judgment as a matter of law if the evidence shows that the plaintiff was aware of, appreciated and voluntarily assumed the risk that led to his injury. *See e.g. Hyland v. State of New York*, 300 A.D.2d 794, 752 N.Y.S.2d

8

113 (2002), *leave to appeal denied*, 100 N.Y.2d 504, 793 N.E.2d 411 (2003) (defendant entitled to summary judgment); *Nagawiecki v. State of New York*, 150 A.D.2d 147, 545 N.Y.S.2d 954 (1989) (verdict for plaintiff reversed and case dismissed).

Thus, in *Hyland*, the defendant was entitled to summary judgment on a claim that the plaintiff was injured while skiing when he encountered a bare spot, lost control and slid into a wooden fence. *Hyland*, 300 A.D.2d at 794, 752 N.Y.S.2d at 115. The court explained that "the subject fence was an open and obvious structure which existed on the boundary of a ski trail." 300 A.D. 2d at 796, 752 N.Y.S.2d at 116. There was evidence that the ski area had many such fences to "'hold snow' on its particularly steep slopes, to define the intersection of trails and to protect terrain." 300 A.D. 2d at 796, 752 N.Y.S.2d at 116. In these circumstances, the defendant was entitled to summary judgment because the evidence "demonstrated that the fence was a man-made object incidental to the provision and maintenance of Whiteface (see General Obligations Law § 18-101) such that claimant assumed the risk of colliding with it that day." 300 A.D. 2d at 796, 752 N.Y.S.2d at 116.

Similarly, in *Nagawiecki*, the defendant was entitled to judgment as a matter of law in a case where a skier collided with a pole holding a safety fence. *Nagawiecki*, 545 N.Y.S.2d at 955. The court concluded that "under these circumstances, there is no

9

duty imposed upon the State as landowner and operator of a ski area to pad poles or fences, along the access lines to lifts or facilities located away from slopes and trails at the base of the outrun and beyond the limits of normal skiable terrain to protect claimant from the unfortunate consequences of her own actions." *Nagawiecki*, 545 N.Y.S.2d at 956. The court also concluded that there would be no liability even if it were possible to make the fence or post safer. *Nagawiecki*, 545 N.Y.S.2d at 956 ("the fact that materials are available to make fences and posts such as the one struck by claimant safer or more flexible does not alter the logic of our conclusion."). *See also Brinker v. Hunter Mountain Ski Bowl*, CAL No. 03-10023 (order granting motion for summary judgment; "As an experienced skier, the plaintiff knew or should have been known the potential for moguls or other variations in the terrain as she approached the fence, a clearly visible hazard.")[1]; *Braun v. Davos Resort, Inc.*, 241 A.D.2d 533, 661 N.Y.S.2d 643 (1997) (defendant entitled to summary judgment because minor plaintiff assumed risk of losing his balance while skiing and sliding off of trail)[2].

---

[1] A copy of the order in the *Brinker* case is attached as EX. 7 to Catamount's motion.

[2] In some cases, New York courts have denied summary judgment where there was a genuine issue of material fact regarding whether a minor understood the relevant risk. *See e.g. DeLacy*, 302 A.D.2d at 736, 755 N.Y.S.2d at 486. Those cases are distinguishable, because, in this case, the evidence shows that Andrew had several years of experience and was specifically aware

The rationale of these cases is directly applicable here. Andrew was fully aware of the danger of colliding with objects on the hill. The fence was clearly incidental to the operation of the ski area because it kept skiers out of an area where they could collide with riders on a chair lift. He voluntarily assumed that risk by participating in the sport and he cannot recover damages for his resulting injuries.

Alternatively, assuming that Massachusetts law applies,[3] Catamount is still entitled to summary judgment because the plaintiff's injury resulted from an inherent risk of skiing. The Massachusetts legislature has enacted several provisions which limit the liability of ski areas. The Supreme Judicial Court has explained that G.L. c. 143, §§ 71H-71S "was enacted to define and restrict the responsibility and liability of ski operators to skiers injured by risks inherent in the sport of skiing." McHerron v. Jiminy Peak, Inc., 422 Mass. 678, 679 (1996).

---

of the risk of colliding with objects on a hill. In a number of cases, New York courts have held that a minor plaintiff assumed the risk that he would be injured while participating in a sport. See e.g. Palozzi v. Priest, 280 A.D.2d 986, 720 N.Y.S.2d 676 (2001); Papa v. Russo, 279 A.D.2d 744, 719 N.Y.S.2d 723 (2001) leave to appeal denied, 99 N.Y.2d 507, 787 N.E.2d 1163 (2003); Griffin v. Lardo, 247 A.D.2d 825, 668 N.Y.S.2d 837, leave to appeal denied, 91 N.Y.2d 814, 698 N.E.2d 956 (1998); Braun v. Davos Resort, Inc., supra ; Morales v. New York City Housing Authority, 187 A.D.2d 295, 589 N.Y.S.2d 456 (1992).

[3]Catamount is located on the border between New York and Massachusetts, with part of the ski area in each of those states.

Accordingly, a ski area is entitled to summary judgment if the plaintiff was injured as a result of an inherent risk of skiing. See e.g. McHerron, 422 Mass. at 680 (ski area not liable for injury caused by bare spots); Saldarini v. Wachusett Mountain Ski Area, Inc., 422 Mass. 683 (1996) (ski area not liable for injury caused by icy condition on chairlift offloading ramp); Spinale v. Pam F., Inc., 1995 Mass. App. Div. 140 (upholding orders granting defendants' motions for summary judgment where plaintiff hit clumps of ice in the middle of a trail, lost control, skied off the trail and crashed into trees and boulders).

G.L. c. 143, § 710 provides that a skier is presumed to know the inherent risks of skiing. In particular, the statute states that:

> A skier shall be presumed to know of the existence of certain unavoidable risks inherent in the sport of skiing, which shall include, but not be limited to, variations in terrain, surface or subsurface snow, ice conditions or bare spots, and shall assume the risk of injury or loss caused by such inherent risks.

It is also clear that "inherent risk of skiing" is not limited to natural conditions. McPherson itself involved a man-made condition, a bare spot allegedly caused by placing a snow-making machine behind a tree. See McPherson, 422 Mass. at 678. Furthermore, the ski statute refers to man made objects. See G.L. c. 143, § 710 ("the responsibility for the collision with any obstruction, man-made or otherwise, shall be solely that of

12

the skier and not that of the operator, provided that such obstruction is properly marked pursuant to the regulations promulgated by the board."). It is, therefore, clear that inherent risks of skiing are not limited to natural conditions.

In this case, the defendant is entitled to summary judgment because the plaintiff's injury resulted from an inherent risk of skiing. Fences are a necessary part of a ski area to separate skiing trails from other areas. Thus, the fence at Catamount kept skiers out of an area where they could collide with riders on a chair lift. Collisions with man-made or natural objects on a hill are an inherent risk of skiing so that the plaintiff cannot recover, even if Massachusetts law applies.

### Conclusion

For all of the foregoing reasons, the defendant respectfully submits that its motion for summary judgment should be granted.

By its attorneys,

/s/ William L. Keville, Jr.
William L. Keville, Jr.
BBO# 546525
Andre Sansoucy
BBO# 441410
Gregory M. Boucher
BBO# 665212
MELICK, PORTER & SHEA, LLP
28 State Street
Boston, MA 02109-1775
(617) 523-6200

Dated: 9/22/06

CERTIFICATE OF SERVICE

I, Andre Sansoucy, hereby certify that on this day, I forwarded notice of the foregoing document(s) by mailing a copy thereof, postage prepaid to the following:

        Charles Ferris, Esquire
        500 Main Street
        Great Barrington, MA 01230


_____
Andre Sansoucy

Date  September 22, 2006