10/13/06 mef

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRAIG DAVIS, as parent and natural guardian of ANDREW DAVIS,
Plaintiff,

-against-

CATAMOUNT DEVELOPMENT CORP., CATAMOUNT DEVELOPMENT CORP, d/b/a CATAMOUNT SKI AREA,
Defendants.

CIVIL ACTION
No. 05-30011-MAP

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## STANDARD OF REVIEW

It is well settled that summary judgment must be denied where there are disputed issues of material fact. FRCP 56. If, under any reasonable inferences which arise from the material submitted in opposition to the motion, a jury could return a verdict in favor of the opposing party, the motion must be denied. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-50 (1986). The standard of review applicable to this motion is to determine whether genuine disputed factual issues exist, not how they should be decided.

## I. CHOICE OF LAW: NEW YORK STATE SUBSTANTIVE LAW APPLIES TO THE DISPUTE

Catamount Ski Area is located both in Massachusetts and New York State. Defendant has been supplied with a survey showing the accident location clearly in the State of New York (Exhibit 1), and Defendant has not contested this fact with admissible evidence.

Plaintiff is, and at the time of the accident was, a resident of Connecticut. Defendant is incorporated in New York (See Answer, Third), and admits that in operating its ski area

it complies with regulations of New York (Gilbert Dep., Exhibit 9 at 61).

Under *Erie RR Co. v Tompkins*, 304 U.S. 64, 78 (1938), this Court must apply the law of the forum state, *including* its choice of law principles. *See also Klaxon Co. v Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Because this accident occurred in New York and involved a Connecticut resident, Massachusetts choice of law principles would result in the application of New York substantive law, since it has the most significant relationship with the dispute and the parties.

Although Massachusetts does not automatically apply the rule of *lex loci delecti,* "traditionally, in matters of tort, the courts of this Commonwealth apply the substantive laws of the jurisdiction wherein the tort occurred". *Cosme v White Machine Works, Inc.* , 417 Mass. 643, 645 (1994); *Cohen v McDonnell Douglas Corp.*, 389 Mass. 327, 333 (1983) (substantive law to be applied is that of the place where the injury occurred). *See also* Restatement 2d, Conflict of Laws § 6 (2). The justified expectations of a Connecticut skier injured in New York on the premises of a New York corporation would be that New York law would apply. Since Catamount is incorporated in New York and expects to comply with New York laws, its expectations would not be undercut by applying New York substantive law.

## II. DEFENDANT BREACHED ITS DUTY OF CARE BY FAILING TO MAINTAIN ITS PROPERTY IN REASONABLY SAFE CONDITION AND FAILING TO WARN OF A KNOWN HAZARD

As will be set forth below, Defendant breached its common-law and statutory duties to inspect their premises, warn of a potential hazard and repair the defect to avoid foreseeable injury by Plaintiff.

*Common Law Duties*

In the seminal New York case addressing the duties owed by property owners *Basso v Miller*, 40 N.Y.2d 233, 386 N.Y.S. 2d 564 (1976), the New York Court of Appeals held that all property owners had a duty to maintain their property in reasonably

safe condition. *See also Alberti v State*, 172 A.D. 2d 471, 567 N.Y.S.2d 825 (1991). The scope and nature of the duty to maintain property in reasonably safe conditions under the circumstances requires consideration of the likelihood of injury from a dangerous condition on the property, seriousness of potential injury, the burden of avoiding the risk, and the foreseeability of plaintiff's presence on the property. *Kush v City of Buffalo*, 59 N.Y.2d 26, 29-30 (1983); *Basso supra,* 40 N.Y.2d at 241 (1976); "Developments in New York Practice," 50 St. John's L. Rev. 819, 820 (1976).

A fence must be constructed and maintained in a reasonably safe condition for its intended purpose. *O'Connor v Kulerban Hold. Corp.*, 265 N.Y. 461, 1934 NY Lexis 1073; *Schwartz v. Armand Erpf Estate*, 255 A.D. 35, 688 N.Y.S.2d 55, 59 (1st Dept. 1999); *Singleton v. NYC Hous. Auth.*, 200 A.D.2d 732, 607 N.Y.S.2d 110, 111 (2d Dept. 1994).

Landowners also have a duty to warn of a dangerous condition on the property as a counterpart of their duty to keep property in good repair. *Galindo v Town of Clarkson,* 2 N.Y. 3d 633, 636 781 N.Y.S.2d 249 (2004), especially where the danger may constitute a trap to the unwary not likely to be discovered upon inspection. *Basso, supra*, at 40 N.Y.2d 239.

The duty to warn may be tempered where a risk is open and obvious, but whether a risk is open and obvious is generally a jury question. *Liriano v Hobart Corp.*, 92 N.Y.2d 232, 242 (1998); *Bolm v Triumph Corp.* 33 N.Y. 2d 151, 159-60 (1973); *Palsgraf v LIRR, Co.*, 248 N.Y. 339, 345 (1928) ("if varying inferences are possible, [it is] a question for the jury") (Cardozo, J.)

The common law duty to repair premises and/or to warn of unexpected dangers extends to ski areas. In *Sharrow v NYS Olympic Reg'l Dev. Auth.,*307 A.D.2d 605, 762 N.Y.S.3d 703 (2003), the Court held the ski area breached the duty to warn about an unexpected man-made "table top" or jump, even though variations in terrain are an inherent risk of skiing. Thus, the ski area violated its common law duty to keep its premises "as safe as they appeared to be", since the hazard was not a risk that claimant

assumed. *Id.* At 608.

In *Sytner v State*, 223 A.D.2d 140, 645 N.Y.S.2d 654 (3d Dept. 1996), it was held that the duty to warn encompassed the duty to alert oncoming skiers of a huge ice patch with a bare spot, even though skiers normally assume risks of terrain and snow conditions. In that case, skiers were funneled towards the dangerous area by snow making activities.

The *Sytner* court explained that the State of New York has adopted a law known as the "Safety in Skiing Code" (N.Y. Gen. Oblig Law §§ 18-101 et. seq.), which describes certain duties owed by skiers and ski areas. However, the Court stated that this Code "was not meant to abolish the common law duty to warn of dangerous conditions". *Sytner v State of New York*, 223 A.D.2d 140, 143, 645 N.Y.S.2d 654, 656 (3d Dept. 1996) (citing legislative memorandum accompanying the Code, quoted in *Sytner, supra*).

In the present case, one of the fence posts alongside the crossover trail had collapsed and was leaning over at about a 45 degree angle and embedded in what Plaintiff contends is part of the trail (See Exhibits 20-36). This created a trap for the tips of skis of passing skiers, and according to one ski patroller Andrew's ski's "caught the corner of the post" (Schroeppel, Exhibit 7 at 13).

There is no dispute that the post had been leaning over for at least several days, and that Catamount's General Manager and ski patrol had notice of this fact (Gilbert, Exhibit 9 at 95; Brousseau, Exhibit 6 at 22-23; C. Davis, Exhibit 3 at 74). Nor is there any dispute that it was part of the regular maintenance policy of the ski area to inspect for potential hazards on its trails, including anything out anything out of the ordinary that could present a danger to skiers, and to straighten leaning fence posts (see Statement of Facts ¶¶ 18-30).

There also is no dispute that the area alongside the post was snow covered on the date of the accident, fairly level, and skiable terrain, and that skiers were regularly seen by Catamount staff in that area skiing (i.e. between fence and bush) (Statement of Facts ¶¶ 35 & 40).

Mr. Gilbert of Catamount disputed at his deposition that this area was a "trail",

explaining that he didn't fix the fence post and there was no rush to do so because he felt skiers didn't belong there (Exhibit 9 at 79). However, there is ample evidence that he is wrong, and that such a conclusion is merely a self-serving litigation defense.

Catamount normally marks out-of-bounds areas or closed areas with bamboo poles, orange tape, signs or fences. (Statement of Facts ¶ 42) Trail Maps also designate areas that are out of bounds. "Ski slopes and trails" are defined by statute as those areas designated for skiing. N.Y.G.O.L. §18-102 (7). Ski areas are also required to post a sign informing skiers of the location of all slopes and trails N.Y.G.O.L.§18-103 (5). Upon information and belief the sign posted by Catamount is the same or very similar to the trail map in use at the time of the accident (Exhibit 13). There is no showing on the trail map that the area of the accident is out of bounds or otherwise not designated for skiing, and skiers would be entitled to rely on the trail map in determining where and how to ski down the mountain. Nothing on the map alerted skiers that the snow to the right of the bush on the cross over trail was off limits, and there were no signs, ropes, tape or fences erected to designate this area as off limits to skiers (Adams, Exhibit 8 at 39).

According to Plaintiff's expert this 6 foot wide path constituted part of the Crossover Trail (see Exhibit 19). His conclusion is supported by various factors noted above, including regular use by skiers which was known to Catamount's staff.

Thus, given that Defendant had notice of the existence of this hazard, that it regularly inspected for and removed such hazards, the common law duties to warn of a hazard in an area of foreseeable skier use, and to repair it were breached. It is not reasonable to assume as a matter of law that a 7-year-old participant in a skiing class, whose attention is directed in part to following his classmates down the hill, and to practicing turns, would become aware of this hazard and appreciate the trap posed by this fence, and its ability to catch a ski tip at the angle made by the post protruding onto the trail.

*Statutory Duties*

In addition to this common law breach of duty, Plaintiff alleges that Catamount also breached its statutory duty to inspect trails, mark obstacles that were less 6 feet above

snow level, and remove hazards on the trails. The NY Safety in Skiing Code imposes several affirmative duties that were apparently breached here. NY General Obligations Law Section 18-103 (quoted in redacted form below) requires ski operators:

> "4. To conspicuously mark . . . the location of such man-made obstructions . . . that are within the borders of the designated slope or trail, when the top of such obstruction is less than six feet above snow level.
>
> 6. To inspect each open slope or trail that is open to the public within the ski area at least twice a day, and enter the results of such inspection in a log . . . [which] shall note:
>
> a. [general surface conditions]
> b. the time of inspection and the name of the inspector;
> c. the existence of any obstacles or hazards other than those which may arise from:
> (i) skier use;
> (ii) weather variations from freezing and thawing; or
> (iii) mechanical failure of snow grooming or emergency equipment . . .
>
> 13. To, within a reasonable amount of time after the inspection required by subdivision six of this section conspicuously mark . . . and to provide sufficient warning to skiers by such marking or remove such obstacles or hazards which are located within the boundary of any ski slope or trail and were noted pursuant to paragraph c of subdivision six [and to take the same steps if skiers report obstacles or hazards on trails]."

The foregoing statutory scheme and the general duties imposed upon defendants and its ski patrollers would support Plaintiff's claim here. The ski slope inspection reports prepared by Defendant after the patrollers made their daily inspection failed to list this hazard (see Exhibit 14, January 25, 2004), even though it was the understanding of Catamount ski patrollers that they were required to inspect and report any hazard that could pose a danger to passing skiers (Statement of Facts ¶¶18-30). Indeed, one ski patroller testified that if he had seen the condition of the post prior to the accident he

would have marked it as a hazard (Schroeppel, Exhibit 7 at 30, 28-30). This is the same procedure adopted at other ski areas. *Sytner* v *State*, 223 A.D.2d 140,141,645 N.Y.S.2d 654, 655 (3d Dept. 1996) (any hazards found in daily inspections would be marked off with cones, poles or tape). It is also imposed upon ski patrollers in the Ski Patrollers Handbook (Exhibit 11). Thus, it appears that on the date of the accident, a question of fact has been raised as to whether Catamount failed to carefully inspect its slopes and take steps to mark the collapsed fence post, which was less than 6 feet above snow level, or remove it within a reasonable period of time in violation of the NY Safety In Skiing Code.

## III. PLAINTIFF DID NOT ASSUME THE RISK OF A COLLAPSED FENCE POST WHEN HE ENTERED HIS SKIING CLASS

A. *Assumption of Risk Doctrine*

The assumption of risk doctrine does not serve as a bar to Plaintiff's claim. This doctrine was first enunciated by Judge Cardozo in *Murphy v Steeplechase Amusement Co.*, 250 N.Y. 479 (1928), where plaintiff sustained a fractured knee cap walking on a Coney Island moving belt attraction called "The Flopper". Judge Cardozo analyzed the issue as follows:

> "A fall was foreseen as one of the risks of the adventure. There would have been no point to the whole thing, no adventure about it, if the risk had not been there.
>
> One who takes part in such a sport accepts the dangers that inhere in it so far as they are necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball." 250 N.Y. at 481 and 482-483.

The assumption of risk doctrine has been adopted by New York courts in a variety of athletic contexts to insulate defendants from personal injury claims arising out of known and essential risks of the sport:

> "Relieving an owner or operator of a sporting venue from liability for inherent risks of engaging in a sport is justified when a consenting participant is aware of the risks; has an appreciation of

the nature of the risks; and voluntarily assumes the risks." *Morgan v State,* 90 N.Y.2d 471,484, 662 N.Y.S.2d 421 (1997).

Accordingly, many courts have dismissed recreational injury cases, including ski injury cases where the claim is inextricably tied to an inherent risk of the activity. *See e.g., Maddox v City of New York*, 66 N.Y.2d. 270, 496 N.Y.S.2d (1985) (professional baseball player knowingly assumed risk of playing on a muddy field); *Turcotte v Fell*, 68 N.Y.2d 432, 510 N.Y.S.2d 49 (1986) (plaintiff knowingly assumed risks of injury in professional horse racing); *Atwell v State*, 229 A.D.2d 849, 645 N.Y.S.2d 658 (3d. Dept. 1996) (collision with tree at edge of trail after turning to avoid fallen skier was an assumed risk of skiing); *Adamczak v Leisure Rinks Southtown Inc.*, 170 A.D.2d 951, 565 N.Y.S.2d 661 (4th Dept. 1991) (skater assumed risk of injury by contact with a rink divider); *Morgan v State, supra,* (olympic bobsledder assumed risk of injury in highly dangerous sport). In those cases, the Courts held the defendant to the limited duty of making their venues as safe as they appear to be.

It is further noted that New York has statutorily defined certain risks that are inherent in skiing and therefore may be assumed (if common law duties do not supercede), among them variations of terrain, weather conditions, snow conditions, ice, bare spots, moguls, ruts, bumps, other skiers, and man-made objects incidental to maintenance. N.Y.G.O.L. 18-101.

However, the line between assumed risk and contributory negligence can be indistinct at times. See the discussion in *Verduce v. Bd. of Higher Educ.*, 9 A.D.2d 214, 216-19, 192 N.Y.S.2d 913 (1st Dept. 1959) (dissenting op.), *rev'd on dissenting op.*, 8 N.Y.2d 928 (actor did not assume risk of injury stepping down from high stage step at direction of instructor).

B. Analyzing Inherent Risk

As can be seen from the source case, (*Murphy v Steeplechase Amusement Co.,)* a question of fact may be raised in the efforts to discover. "the dangers that inhere [in an activity] so far as they are necessary," *Murphy, supra.* The word "inherent" has been defined as "involved in the constitution or essential character of something" (Webster's

Collegiate Dictionary, 1979).

It is submitted that collapsed or leaning fence posts are not part of the essential character of skiing, and therefore are not part of the dangers assumed by participants in the sport. This analysis is supported by numerous cases.

The most significant case decided by the New York Court of Appeals which illuminates this issue is *Siegel v The City of New York*, decided as part of a group of cases in *Morgan v State*, 90 N.Y.2d 471, 662 N.Y.S.2d 421 (1997). In this case, a 60-year old plaintiff was injured playing tennis at an indoor tennis club. During a game:

> "he snagged his foot in a torn vinyl hem at the bottom of the net dividing the indoor tennis courts. He had been a member of the club for 10 years and played doubles tennis there once a week. His deposition testimony showed that he had known for over two years that the side divider was ripped and that although he had never informed management of the problem, other members had". 90 N.Y2d at 488

The Court of Appeals reversed lower court orders which granted and affirmed a summary judgment motion, essentially holding that

> "the torn net separating the tennis courts was not "inherent" in the sport and therefore a player should not be deemed to have assumed the risk of such a tripping accident during a tennis match". 90 N.Y.2d at 488.

Even though the Court recognized that the dividing net <u>was</u> an inherent part of the sport in that it prevented balls and players from other courts from interfering with a participant's game, a damaged safety feature was not an inherent risk.

> "[A] torn or allegedly damaged or dangerous net - or other safety feature - is by its nature not automatically an inherent risk of a sport as a matter of law for summary judgment purposes. Rather, it may qualify as and constitute an allegedly negligent condition occurring in the ordinary course of any property's maintenance and may implicate typical comparative negligence principles.
>
> Thus, the issue boils down to whether defendants here had a continuing duty to players to keep the net in good repair. We hold that they may in these circumstances and as to plaintiff Siegel, because a torn net is not sufficiently interwoven into the assumed

> inherent risk category.
>
> We agree with Siegel's argument that because a torn net is not an "inherent" part of the game of tennis in and of itself, he should not be deemed legally to have assumed the risk of injuries caused by his tripping over it. Our precedents do not go so far as to exculpate sporting facility owners of this ordinary type of alleged negligence." 90 N.Y.2d at 488-89.

The foregoing analysis is both analogous to, and dispositive of, this motion. The fence that Defendants erected allegedly served a safety purpose (to keep skiers from skiing under a low part of a chair lift where they might collide with moving chairs). But a collapsed post, like a torn hem of a net, which creates a tripping hazard, is not inherent or essential to the sport. It is a negligent condition occurring in the ordinary course of a ski area's maintenance. The responsibility for straightening fence posts was acknowledged by maintenance employees and ski patrollers at Catamount Ski Area (Statement of Facts ¶¶18-21). Therefore, it would be improper to conclude as a matter of law that the 7-year-old plaintiff assumed the risk that his right ski tip would be caught at the base of the collapsed pole on the trail thereby snapping his femur in two, where Catamount failed to follow its established maintenance policies.

There are many ski cases which have rejected assumption of risk doctrine as a basis for summarily dismissing claims. In *Basilone v Burch Hill Operations Inc.*, 199 A.D.2d 779, 605 N.Y.S.2d 423 (3d Dept. 1993), an inexperienced skier collided with a fence post allegedly on a trail and suffered a broken leg. The Court concluded that the location of the post was an unresolved material issue, and that it could not conclude that plaintiff had assumed the risk of colliding with this type of man-made obstacle located within the confines of a ski trail. *Id.* at 780, 605 N.Y.S.2d at 424.

In *Younger v Hunter Mt. Ski Bowl, Inc.*, 1995 U.S. Dist. Lexis 4540 (N.D.N.Y. 1995), the plaintiff, an expert skier and ski instructor and ski patroller, was injured when she was trapped by a man-made snow berm that created a steep drop off to the side of trail, causing her to collide with several trees, breaking both of her legs. The Court concluded that there were issues of fact as to whether the man-made berm was an

unreasonable risk created by the ski area. Accordingly, summary judgment was denied, and the Court refused to certify the question for appeal to the Second Circuit.

In *Sytner, supra,* the Court concluded that the skier had not assumed the risk of a large ice patch and bare spot where on-going snow making activities funneled plaintiff towards that hazard.

In *Morgan v Ski Roundtop Inc.*, 290 A.D.2d 618, 736 N.Y.S.2d 135 (3d Dept. 2002), plaintiff was injured while she exited a chairlift, avoiding a fallen skier and colliding with a wall on the exit ramp. While some risk of injury using a chairlift could be assumed by a skier, such a defense could not insulate the ski area where it was alleged that they were negligent in training the ski lift operator and maintaining the lift. 290 A.D.2d at 620.

In *Fabris v Town of Thompson*, 192 A.D.2d 1045, 597 N.Y.S.2d 477(3d Dept. 1993), the Court affirmed a denial of summary judgment where there was a dispute as to whether or not the fence post was on the trail. Therefore, assumption of risk could not be found as a matter of law. In *Bergin v U.S.*, 1985 US Dist Lexis 19103 (S.D.N.Y. 1985), it was held after trial that skier did not assume the risk of a bare spot on the tow rope track.

C. *Awareness of Risk Is A Disputed Question of Fact*

Before someone can be held to have legally assumed a risk, he must be aware of it, and appreciate it. *Morgan, supra*.

As set forth in the Statement of Facts, there is no evidence that Andrew saw or knew about the leaning fence post before he collided with it. Moreover, the instructional exercise he was participating in at the time would have obscured his vision as he closely followed a group of zig-zagging skiers (Statement of Facts ¶¶ 44-48). The ski patrollers admitted no warnings were posted (*Id.* ¶49) and that they would have flagged the hazard if they had seen it (*Id.* ¶30). It is their policy to warn skiers of "anything out of the ordinary" that may present a hazard to skiers" (Exhibit 18 at 13. See also Exhibit 4 at 26-28). This obstacle was less than 6 feet tall and was required to be marked as a hazard under N.Y.G.O.L. ¶18-103 (4) (C. Davis Aff. ¶ 6.) This statute requires that when an obstruction on a trail is less than 6 feet above snow level it shall be conspicuously

marked.

In *DeLacy v Catamount Dev. Corp.*, 302 A.D.2d 735, 755 N.Y.S.2d 484 (3d Dept. 2003), a 7-year-old plaintiff, who had been skiing for 2 years, was the daughter of a world class skier, and had received ski instruction and previously used the chairlift, fell from the lift after prematurely opening the safety bar. Because there were questions of fact as to whether a 7-year-old skier appreciated the risks associated with using the chairlift (and other issues regarding adequacy of equipment and signage) summary judgment was denied.

In *Weller v Colleges of the Senecas*, 217 A.D.2d 280, 635 N.Y.S.2d 990 (4th Dept. 1995), a college student bicycle rider was injured by a protruding tree root when he veered off a paved path and traveled between two trees on a pathway worn by prior travelers. The college admitted that it was their practice to maintain paths by removing tree roots. The question of whether the risk was assumed i.e. a root on a maintained path, was held a question for the jury.

*See also Rios v Town of Colonie,* 256 A.D.2d 900, 682 N.Y.S.2d (3d Dept. 1998) (police officer did not assume risks posed by sharp serrated pipe on an obstacle course); *McCabe v Easter*, 128 A.D.2d 257, 516 N.Y.S.2d 505 (3d Dept. 1987) (evidence did not support claim that mailman was aware of ice under light snow covering which precipitated his injury); *Graham v Murphy*, 135 A.D.2d 326, 525 N.Y.S.2d 414 (3d Dept. 1988), where a 9 year-old boy was bitten by a growling dog that he approached and fell off a porch. The assumption of risk defense failed because there was no evidence the boy understood the risks.

It cannot be presumed as a matter of law that simply because Andrew knew a fence existed, he was aware of the collapsed fence post and appreciated the tripping risk posed by the obstruction.

D. *Evolving Assumption of Risk Doctrine Creates Triable Issues*

In the past several years, courts have distinguished between "primary" and "secondary" assumption of risks. In some instances, such as where plaintiffs are receiving instruction in a particular sport, the courts will analyze the "risks" on a

comparative negligence basis, rather than barring recovery in "primary" assumption of risk cases, where the risk could not be eliminated. *See Livshitz v US Tennis Assoc.*, 196 Misc.2d 460, 761 N.Y.S.2d 825 (Civ. Ct. Queens 2003). In *Livshitz* a 52 year-old player, receiving instruction, was hit in the eye by a coach's serve allegedly before she was ready to participate in the drill. Analyzing the facts, the Court concluded that the USTA had a duty not to increase the risks of the sport, citing in part *Siegel v City of New York, supra*, and *Knight v Jewett*, 3 Cal.4th 296, 834 P.2d 696 (1992). According to the court, an athletic facility providing instruction can not assert assumption of risk as "some sort of amulet that confers automatic immunity" where the instructional activities contributed to the injury. *See also Myers v. Shenendehowa Crew, Inc.*, 31 A.D.3d 853, 819 N.Y.S.2d 143 (2006) (proper supervision was a disputed question of fact).

Here, Andrew was participating in a junior level class, practicing turns and traveling in the manner he was instructed to ski. If those instructions including the standard practice of following the skier in front of him and turning where he turned (A. Davis, Exhibit 2 at 23-26), brought him into contact with a known hazard (a collapsed pole on trail), then under secondary assumption of risk doctrine, the relative fault of the parties should be resolved at trial under comparative fault principles. N.Y.C.P.L.R. §1411. If he was not properly supervised (i.e. not instructed to stay to the right of the bush) that may also support liability.

## IV. DEFENDANT'S LEGAL ANALYSIS DOESN'T APPLY TO THE FACTS

Defendant's reliance on *Hyland v State*, 300 A.D.2d 794, 752 N.Y.S.2d 113 (3d Dept. 2002), and *Nagawiecki v State*, 150 A.D.2d 147, 545 N.Y.S.2d 954 (3d Dept. 1989), is misplaced. Although in both cases defendants were relieved of liability for skiers who injured themselves after colliding with fences on an "inherent risk" analysis, they are easily distinguishable. In *Hyland,* the plaintiff encountered a "bare spot" which caused him to lose control and slide into the fence. Claimant was an experienced skier, who knew that he was skiing in "spring conditions" including bare and thin spots. This was the proximate cause of the fall. Moreover, contrary to the present case, there was no

evidence in *Hyland* that the boundary fence post was on the trail or in ill-repair.

In *Nagawiecki*, the 20-year-old expert skier was forced to abruptly change course to avoid another person, slipped on an icy patch and hit a fence that was not on the trail. Again, it is clear that the accident was precipitated by statutorily assumed risks - ice, other area users. Because the fence post was not on the trail, there was no duty to pad it. A number of courts have distinguished *Nagawiecki* where fence posts were on or alongside trails *Fabris, supra*; *Alberti v State*, supra (wooden post alongside sledding hill improper); *Basilone, supra*. In such cases it appears that an obstruction on the trail may have to be padded if it is not removed.

The *Brinker v Hunter Mountain Ski Bowl* slip opinion relied upon by Defendant is similarly inapplicable. The *Brinker* plaintiff, who had 20 years of experience skiing, was caused to fall by "moguls" which are a statutorily enumerated assumed risk of skiing.

## V. MASSACHUSETTS LAW DOES NOT BAR PLAINTIFF'S CLAIMS

Under Massachusetts law, ski areas are not liable for damages which arise out of the risks inherent in the sport of skiing (*See M.G.L. ch. 143 § 71N 6*). However, this statute does not mention fences, or broken fences, as an enumerated risk. This is not a case where a skier voluntarily left the ski trail and encountered a dangerous condition or encountered an inherent risk (such as a bare spot) precipitating a fall. Rather, any skier on the mountain that day could have become caught in that collapsed fence post and become seriously injured.

The depositions of the Catamount Ski Patrollers establish, for purposes of this motion, that the defendants had a duty to inspect the trails for hazards and to warn all skiers, including the plaintiff, of dangerous conditions (Statement of Facts ¶18-30). The defendant's employees also confirmed that although required to mark of areas they considered dangerous to skiers, they failed to do so. (Id. ¶49). Specifically, Judy Gardner and Bud Gardner confirmed that there were no warnings posted about this fence post on the trail on the day in question. (Exhibit 4 at 31, Exhibit 5 at 27).

Aside from duties imposed by the Massachusetts statute, the ski area also has a

common law duty to maintain its property in reasonably safe condition and to warn skiers of dangerous conditions, and to mark off areas they consider dangerous to skiers. See generally *Mounsey v Ellard,* 363 Mass. 693, 708 *(1973): Martins v Healy,* 15 Mass. L. Rep. 42 Super. Ct. 2002).

Massachusetts law still imposes liability upon ski operators when injuries are sustained as a result of conditionswhich are not within typical risks inherent in the sport of skiing. Defendant's own employee has established that he would have marked the fence post if he saw it because it was not a risk typically encountered in the sport (Statement of Facts ¶30). See generally, *McHerron v Jiminy Peak, Inc.* 422 Mass. 678 (discussing inherent risk ski cases - - none of which involved a defectively maintained structure).

**CONCLUSION**

Taking the facts in the light most favorable to Plaintiff, it is clear that there are genuine, material, disputed issues of fact which remain to be decided at trial. Summary Judgment must be denied when Plaintiff's positions on these disputed issues are supported by credible evidence upon which a jury could reasonably rely in returning a verdict in his favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-50 (1986).

Among the issues which remain to be decided are whether Catamount violated its common law duty to keep its premises in reasonably safe condition, whether Catamount violated its statutory duty to inspect its trails, whether Catamount violated its statutory duty to warn skiers of hazards on the trail, whether Catamount violated its statutory duty to remove the hazard within a reasonable time, whether the post was located within the confines of a trail, whether the post presented a hazard, whether a post on the trail should be padded or constructed with flexible material, whether Andrew was properly supervised, whether Andrew was comparatively negligent in failing to discover and avoid the post. All of these issues must await resolution at trial.

It cannot be concluded as a matter of law that a poorly maintained fence post, which the ski area had notice of, and failed to repair in violation of its own policies and applicable law was an inherent and essential part of the sport of skiing. The motion should be denied.

Respectfully Submitted,

Craig Davis, as parent of Andrew Davis, Plaintiff
by his attorney,

October 13, 2006

Charles J. Ferris
500 Main Street
Great Barrington, MA 01230
413 528-8900
413-528-9132 facsimile
BBO # 565630

**CERTIFICATE OF SERVICE**

On October 13, 2006 Plaintiff served its opposition to Defendant's Motion for Summary Judgment upon William L. Keville, Jr., Counsel for Defendant electronically (without exhibits) and by mail, addressed to 28 State Street, Boston, MA 02109-1775 with exhibits.

Charles J. Ferris