UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG DAVIS, as parent and natural guardian of ANDREW DAVIS,<br>          Plaintiff,<br><br>v.<br><br>CATAMOUNT DEVELOPMENT CORP., CATAMOUNT DEVELOPMENT CORP. d/b/a CATAMOUNT SKI AREA,<br>          Defendants. | CIVIL ACTION<br>NO. 05-30011-MAP |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Introduction

This reply brief will respond to the contentions made in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") and Statement of Facts (Including Material Facts That Are Disputed) ("Plaintiff's Statement of Facts").

## Plaintiff's Factual Assertions[1]

The Plaintiff's Opposition asserts that the defendant, Catamount Development Corporation ("Catamount") knew or should have known that the post in question was leaning over prior to the accident. *See* Plaintiff's Statement of Facts, ¶¶ 18-32. That contention is beside the point. Catamount's motion for summary judgment is not based on an absence of notice to Catamount; it is, rather, based on the undisputed facts that the minor plaintiff, Andrew Davis ("Andrew"), was aware of the fence

---

[1] The plaintiff's statement of facts contains a number of inaccuracies. Paragraph 6 asserts that Catamount understood that it was obligated to comply with New York law. That statement is overbroad. The ski area is located, in part, in Massachusetts. Catamount did not have to comply with New York law on the portion of its property located in Massachusetts. Paragraph 37 refers to an incident report involving this accident, but the document submitted as exhibit 12 refers to a different accident. Catamount would have no objection if the plaintiff substitutes the correct incident report. In any event, Judy Gardner testified that the location of the accident was "at the crossover between two slopes, On Stage and Catamount. It is in an area that we have fenced off." (Plaintiff's EX. 4, p. 12). She added "[m]y understanding is he hit the fence." (Plaintiff's EX. 4, p. 12). When asked if the accident occurred on the trail, she responded "I'm not exactly sure how to answer that. It occurred on the fence." (Plaintiff's Exhibit 4, p. 33). The fence was a boundary marking the edge of the trail. Contrary to the plaintiff's assertion in paragraph 33, there is no evidence that the post was within the trail. For that reason, the plaintiff's reliance on cases involving obstacles on a trail is misplaced. Finally, the plaintiff's assertion in paragraph 51 that the orange disc was not visible until a skier passed the post is not supported by any evidence. The photographs clearly show that the disc was visible from a distance. *See e.g* Defendant's EX. 62.

2

and the area surrounding it and deliberately decided to try to ski past it.

Andrew's own testimony conclusively establishes that he was aware of the risk. First, he acknowledged that he was aware of the inherent risks of skiing, including the possibility of hitting obstacles.

> Q. And by the time you were in the second grade were you aware that there were certain risks inherent in the sport of skiing?
>
> A. Yes.
>
> Q. And what were the risks that you were aware of at that time?
>
> A. Well, **colliding with** other skiers. Hitting trees or **obstacles**. And going off trails, going on trails that aren't your ability. (Defendant's EX. 1, Deposition of Andrew Davis, p.12 ) (bolding added).

It is also clear that Andrew saw the fence before he tried to ski past it. He testified that he saw others ski past the same fence:

> Q: Did you observe the leader of your group who your group was following, did you observe where they went as they went through that crossover, the first person in line?
>
> A: Yes.
>
> Q: Where did they go?
>
> A: They went through the bush and the fence. (Defendant's EX. 1, Deposition of Andrew Davis, p. 32).
>
> . . .

3

> Q: Now, I believe you said the first person in line went between the bush and the fence post?
>
> A: Yes.
>
> (Defendant's EX. 1, Deposition of Andrew Davis, p. 33).

Finally, he testified that he had seen the fence prior to the day of the accident:

> Q: Had you ever seen it before that day, the orange fence with the poles?
>
> A: Yes, I seen the fence before. (Defendant's EX. 1, Deposition of Andrew Davis, pp. 46-47).

Given Andrew's own testimony that he saw the fence and the poles, the plaintiff's contention that Andrew's vision was somehow obstructed is irrelevant. See Plaintiff's Statement of Facts, ¶¶ 45-47.

The plaintiff cites evidence that the defendant has a policy of marking obstacles on a trail with orange discs. See Plaintiff's Statement of Facts, ¶¶ 25-26. In fact, the fence in question was marked with an orange disc. See Defendant's EXS. 12C, 62. There is, therefore, no evidence that Catamount failed to mark the fence in accordance with New York requirements.

The plaintiff has submitted no evidence that it was negligent to have a fence blocking the area under the chairlift. It is undisputed that the fence was intended to show that the area under the lift was out of bounds because, if there was a

great deal of snow, a skier could contact someone riding up on the lift. (Defendant's EX. 6, Deposition of William Gilbert, February 27, 2006, pp. 57-58, 66). The plaintiff asserts, however, that the pole from the fence was leaning and jutted out onto the trail. (Plaintiff's Statement of Facts, ¶ 36). In fact, Andrew tried to ski between the bush and the fence post, and the pole was leaning away from that area. *See* Defendant's EX. 12A, 62; Plaintiff's EX. 26, 29, 30, 35. Furthermore, the fence with an orange disc attached was plainly visible, as the plaintiff acknowledges. *See* Plaintiff's Statement of Facts, ¶ 28 ("The accident site and fence post were easily visible from chairlift #3 which passed right over it.").[2] Chairlift 3 was the one that Andrew rode on. *See* Deposition of Andrew Davis, p. 21. (attached).

## Argument

**Catamount's Motion for Summary Judgment Should Be Granted Because the Plaintiff Assumed the Risk that He Would Suffer the Kind of Injury that Occurred and Because that Injury Resulted from an Inherent Risk of Skiing.**

The plaintiff contends that the accident occurred in New York so that New York law applies. For purposes of this motion only, Catamount will assume that the accident occurred in New York. Even if the plaintiff's assertion regarding the location

5

of the accident is correct, Catamount is still entitled to summary judgment.

As the plaintiff acknowledges, under New York law, a defendant is entitled to judgment as a matter of law if the evidence establishes that the assumption of the risk doctrine applies. *See* Plaintiff's Opposition, p. 8, and cases cited in the first paragraph. The plaintiff also concedes that, under that rule, a plaintiff cannot recover if he "is aware of the risks; has an appreciation of the nature of the risks, and voluntarily assumes the risks." (Plaintiff's Opposition, pp. 7-8, *quoting from Morgan v. State,* 90 N.Y.2d 471, 484, 662 N.Y.S.2d 421 (1997).

A plaintiff is bound by his own testimony regarding his knowledge of an alleged hazard. *See Carey v. Lynn Ladder and Scaffolding Co, Inc.*, 427 Mass. 1003 (1998). In this case, Andrew's own testimony establishes that he understood that collisions with objects are an inherent risk of skiing, and that he saw the fence and post before he attempted to ski past them. It necessarily follows that he assumed the risk that he would be injured if he collided with the post.

Since assumption of the risk applies, the plaintiff's discussion of the duty owed by a landowner to exercise reasonable care is beside the point. *See* Plaintiff's Opposition, pp. 2-7. Where assumption of the risk applies, the defendant

6

simply owes no duty and the plaintiff does not have a viable cause of action. *See Morgan v. State,* 90 N.Y.2d at 485, 685 N.E.2d at 208. For the same reason, the plaintiff's discussion of comparative negligence, see Plaintiff's Opposition, p. 13, is misplaced. If primary assumption of the risk applies, there is no need to compare the negligence of the parties, since the defendant had no duty and was not negligent. *Morgan,* 90 N.Y.2d at 485, 685 N.E.2d at 208. ("Without a breach of duty by the defendant, there is thus logically nothing to compare with any misconduct of the plaintiff.")(citation omitted).[3]

### Conclusion

For all of the foregoing reasons, as well as the reasons stated in its principal brief, Catamount respectfully submits that its motion for summary judgment should be granted.

---

[3] Assuming, alternatively, that Massachusetts law applies, Catamount is entitled to summary judgment for the reasons explained in its principal brief.

7

By their attorneys,

*/s/ William L. Keville Jr.*
William L. Keville, Jr.,
BBO# 546525
Andre Sansoucy,
BBO# 441410
Melick, Porter & Shea, LLP
28 State Street
Floor 22
Boston, Massachusetts 02109
Telephone:  (617) 523-6200
Facsimile:  (617) 523-8130

Dated:  October 20, 2006

UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| CRAIG DAVIS, as parent and natural guardian of ANDREW DAVIS, <br>         Plaintiff <br><br> v. <br><br> CATAMOUNT DEVELOPMENT CORP., CATAMOUNT DEVELOPMENT CORP., d/b/a CATAMOUNT SKI AREA, <br>         Defendants | No. 05-30011-MAP |

DEPOSITION OF: ANDREW DAVIS, taken before Sharon R. Roy, Notary Public Stenographer, pursuant to Rule 30 of the Massachusetts Rules of Civil Procedure, at the law offices of CHARLES J. FERRIS, 500 Main Street, Great Barrington, Massachusetts on January 9, 2006, commencing at 2:08 p.m.

A P P E A R A N C E S:

(See Page 2)

Sharon R. Roy
Certified Shorthand Reporter
Registered Professional Reporter

```
 1        A.    Yes.
 2        Q.    And did you meet up with the group that
 3   day?
 4        A.    Yes.
 5        Q.    And what do you remember about that meeting
 6   with the group?
 7        A.    I just remember going up the trail lift
 8   with other people.
 9        Q.    Did you go on chair lift 3 again?
10        A.    Yes.
11        Q.    Was that the same chair lift you took on
12   your first ride up that day?
13        A.    Yes.
14        Q.    Do you know who you were sitting next to
15   that day?
16        A.    No.
17        Q.    Do you remember on that second chair lift
18   ride that day looking at the area where your accident
19   ultimately occurred?
20        A.    No.
21        Q.    When you got up to the top of the hill for
22   the chair lift, what did you do next?
23        A.    I got out of the way and stopped and waited
24   for my sister and other people.
```