UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
CRAIG DAVIS, as parent and natural  )
guardian of ANDREW DAVIS,           )    CIVIL ACTION
                     Plaintiff,     )    No. 05-30011-MAP
    -against-                       )
                                    )
CATAMOUNT DEVELOPMENT CORP.,        )
CATAMOUNT DEVELOPMENT CORP,         )
d/b/a CATAMOUNT SKI AREA,           )
                     Defendants.    )
_____ )

**PLAINTIFF'S MOTION FOR PERMISSION TO FILE
SUR-REPLY BRIEF**

Now comes Plaintiff Craig Davis o/b/o Andrew Davis and moves this Court for permission to file the attached sur-reply brief to correct mis-characterization of the testimony contained in Defendant's Reply Brief. In further support, Plaintiff states:

1. Defendant has mischaracterized and exaggerated the conclusions to be drawn from Plaintiff's Testimony.

2. Plaintiff requests permission to submit a short sur-reply brief to highlight and correct these improper arguments.

Respectfully Submitted,

Craig Davis, as parent of Andrew Davis, Plaintiff
by his attorney,

_____
Charles J. Ferris
500 Main Street
Great Barrington, MA 01230
413 528-8900
413-528-9132 facsimile
BBO # 565630

October 24, 2006

## CERTIFICATE OF SERVICE

On October 24, 2006 Plaintiff served the foregoing upon William L. Keville, Jr., Counsel for Defendant, electronically.

_____
Charles J. Ferris

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG DAVIS, as parent and natural guardian of ANDREW DAVIS,<br>       Plaintiff,<br>-against-<br><br>CATAMOUNT DEVELOPMENT CORP.,<br>CATAMOUNT DEVELOPMENT CORP,<br>d/b/a CATAMOUNT SKI AREA,<br>       Defendants. | CIVIL ACTION<br>No. 05-30011-MAP |

**PLAINTIFF'S SUR-REPLY BRIEF
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

  Plaintiff respectfully requests permission to file this sur-reply brief to correct factual misstatements and inaccuracies in Defendant's Reply Brief.

  Defendant suggests that Andrew was "aware of the risk" of hitting a collapsed fence post which was leaning over in the trail [Reply br. at 3] and that "he saw the fence and post before he attempted to ski past them [*Id*. at 6]. To support this exaggerated claim they cite testimony that Andrew had seen the fence under the lift some time prior to his accident, and the several skiers in front of him passed between the bush and the fence (A. Davis at 33, 46-47).

  What the Defendant blithely ignores is that there is absolutely no evidence that Andrew had seen or heard about a collapsed fence post on a portion of the crossover trail before his collision. He did not dispute that he had seen a 3-sided fence which enclosed a large area underneath the lift at some time prior to the accident. (Although there is no evidence on the exact total length of the 3-sided fence, the photographic evidence shows the fence was supported by many posts and would suggest that the total length of these 3 sides was at least 100 feet) (See Pl. Exhibits 25, 27 and 34). Awareness of the existence of the fence is a different concept than being aware of the condition of a particular post.

Defendants never established whether Andrew had seen the fence post after it fell over and before his injury. The fact that he testified that the several skiers ahead of him passed between the bush and the fence describes their general location, path and direction. But it does not demonstrate that Andrew was able to see the particular post (one of many holding up the fence) (See Exhibits 25,27,34) that he came in contact with. It is very likely that the group of skiers skiing closely ahead of him blocked some of the details of the trail, just as a car or cars ahead of a driver may obscure conditions of the road surface ahead.

In any event the <u>only</u> evidence about when Andrew learned about the post was provided by Andrew. He testified:

Q. What do you remember about the run in which your accident happened?

A. I just remember my right leg going under that post and flipping over it.

(Pl. Exhibit 2 at 29-30)

Q. Had you ever seen that fence post on an angle like that before the day of your accident?

A. I never really recognized it.

(*Id.* p. 35).

Q. Do you remember seeing - - on the day before your accident, do you remember seeing the fence post angled as it is on Exhibit No. 26 when you were skiing the day before?

A. I didn't really pay attention to it.

Q. Do you remember seeing the fence post as you proceeded through the crossover?

A. The day before that?

Q. No, that day.

A. Well, I saw my leg go under it.

(*Id.* 36)

Thus, Defendant's argument, submitted in its Reply Brief that Andrew "saw the fence and post before he attempted to ski past them" [Reply Brief at 6], is plainly not supported by the evidence. It is a mis-characterization of the evidence. Plaintiff suggests that Andrew's deposition testimony quoted above supports the conclusion that the first time he saw the leaning post was when he saw his leg go under it.

### AWARENESS OF A DEFECTIVE STRUCTURE DOES NOT SUPPORT A CONCLUSION THAT THE CLAIM IS BARRED SINCE DEFECTIVE SAFETY EQUIPMENT IS NOT AN INHERENT RISK OF SKIING

Even if Andrew is deemed to have prior knowledge of the defective post, this knowledge is not sufficient to bar his claim. Notably absent from Defendant's Reply Brief is any analysis of the dispositive New York Court of Appeals case on this subject. In *Siegel v The City of New York*, decided as a part of a group of cases in *Morgan v State*, 90 N.Y.2d 471, 662 N.Y.S.2d 421 (1997), the Court of Appeals made it crystal clear that defective safety equipment is not "inherent" in a sport, and therefore even if a plaintiff has knowledge of the defect, the risk of injury from the defect is not deemed to have been assumed by the participant (see *Morgan, supra*, 90 N.Y.2d at 488-89, and Plaintiff's Memo of Law at 8-10).

In the *Siegel* case, the tennis player knew for at least two years that the safety net was torn, creating a tripping hazard, but the court specifically decided that defective safety features are not an inherent risk of a sport, even if the safety feature is inherent to the sport. Rather, it held that such defect may constitute negligent property maintenance which needs to be examined under "typical comparative negligence principles". (*Id.*)

                    Respectfully Submitted,

                    Craig Davis, as parent of Andrew Davis, Plaintiff
by his attorney,

October 24, 2006

                    _____
Charles J. Ferris
500 Main Street
Great Barrington, MA 01230
413 528-8900
413-528-9132 facsimile
BBO # 565630